THE COMMERCIAL BANK OF NEW ORLEANS *v.* MARTIN et al.

A pledgee is bound to take that care of the property pledged which a prudent person (*diligens paterfamilias*) would take of his own. He is not bound to use the utmost diligence.

Where it becomes necessary for a pledgee, in the exercise of the diligence required of him, to employ an agent on account of his particular profession and skill, he will not be responsible for the neglect or misconduct of the latter, where reasonable care was shown in the choice of the agent, as to his skill and ability.

Where the pledgee of a note after obtaining a judgment on it, and taking out a *fi. fa.* which was returned unsatisfied, omits to sue out a *ca. sa.* against the debtor, he will not, in the absence of any proof of injury from such omission, or of any request by the pledgor to take out a *ca. sa.*, be considered as having thereby made himself responsible for the amount of the note.

Where a note deposited as a pledge is not accounted for, and it is shown that the maker was solvent for some time after its maturity, the pledgee will be responsible for its amount. The note must be presumed to have been paid, or its amount lost by the neglect of the pledgee.

APPEAL from the Commercial Bank of New Orleans, *Watts,* J. *Rawle,* for the appellants.    *C. M. Jones,* for the defendants.

The judgment of the court was pronounced by

SLIDELL, J.   The plaintiff concedes that two of the notes sued upon in this case are prescribed.   A third note originated under the following circumstances: On the 3d August, 1837, the Commercial Bank discounted for *Brander, McKenna & Wright,* a note drawn by *Dickens, Webb & Co.,* and endorsed by *Brander, McKenna & Wright,* and by the defendants.   This note became due, and was protested for non-payment, on the 3d March, 1838.   On the 18th June, 1838, the bank discounted a note of *Brander, McKenna & Wright,* endorsed by the defendants for $3,230, "to take up," as is said by the witness, the note of *Dickens, Webb & Co.*   The note for $3,377 93 now sued upon, which is drawn and endorsed in like manner as the preceding, is the renewal of the note discounted the 18th June, 1838, and bears at its foot the following memorandum—to "renew *Dickens, Webb & Co.*"

Soon after the maturity of the note of *Dickens, Webb & Co.,* but at what precise time is not shown, *Martin,* one of the defendants, called upon the bank and requested it to place this note of *Dickens, Webb & Co.,* in the hands of an attorney in Alabama, to whom the Mechanics and Traders Bank, who also held a note of the same parties and under like circumstances as regards the defendants, had, on the same day, as *Martin* represented, transmitted their note. The bank refused to send it to the same attorney, but said they would transmit it to the attorneys usually employed in Alabama by the plaintiffs.   On the 19th July, 1838, the plaintiffs transmitted the note for suit to its attorneys in Alabama, who received it on the 20th July, 1838, and brought suit returnable at the next ensuing term of the United States Court.   An examinaton of the acts of Congress satisfies us that the November term, 1838, of the United States Court in Alabama, to which *Dickens, Webb & Co.* were cited, and in which court both suits were brought, was the earliest term after the month of June, 1838, when, according to the testimony, the note in question became, as urged by the defendant, a collateral security to the claim now sued upon.   It appears that the note put in suit by the Mechanics & Traders Bank was brought to judgment at April term, 1839.   The plaintiffs' attorneys recovered judgment at

the fall term, 1839, and a writ of *fieri facias* was seasonably issued, and was returned " no property."

The defendants contend that they have been discharged ; that the judgment should have been obtained, and a *fieri facias* issued as soon in this case, as in the suit of the Mechanics & Traders Bank, who collected their debt ; and also that a *ca. sa.* should have been issued. Upon these grounds they obtained a favorable judgment from the court below.

We think the court erred. If, under the anomalous contract which is here presented, the note of *Dickens, Webb & Co.* is to be considered a collateral security for the renewed note of *Brander, McKenna & Wright*, and its subsequent renewals, which is the interpretation invoked by the defendants, and the one most favorable to them, there is still no legal defence. If we look to the request of the defendants, it was complied with. The bank did not give *Martin, Pleasants & Co.* the control of the note, nor send it to their attorney; but sent it, in good season, to the attorneys whom it usually employed in its own business, and whom, in the absence of contrary evidence, we may fairly presume to have been competent and faithful. If, on the other hand, we look to the duty of the bank, as mere pledgees, that duty has been fairly performed. The care must be that of a prudent administrator—in the French text, " *un bon père de famille.*" So in the Roman law : *Ea igitur, quæ diligens paterfamilias in suis rebus præstare solet, a creditore exiguntur.* He is not subjected to the requisition of the most exact diligence. Pothier, Nantissement, chap. 11, art. 11, § 32, 33, 34. 2 Kent, p. 579. The bank was obliged to act through attorneys at law in Alabama, and it did for the defendants, and at their request, what it would have done in its own affairs. The duty of a pledgee cannot be considered as more onerous and stringent than that of an agent, and the law is well settled that where, in the course and from the nature of the business, it becomes necessary to employ sub-agents by reason of their particular profession or skill, the agent will not, in such cases, be responsible for the negligence or misconduct of the sub-agent, if he has used reasonable diligence in his choice as to the skill and ability of the sub-agent. See Story on Agency, p. 190. Paley on Agency, pp. 9, 45, and *Baldwin* v. *Bank of Louisiana*, ante p. 13. It is not pretended that in this case, an improper choice was made; nor is there even any reason for charging the attorneys employed in Alabama with neglect of duty. Many circumstances beyond his control might have prevented the most diligent attorney from bringing a cause at once to trial, and, in the absence of proof of negligence, we have no right to presume it because another attorney got judgment one term earlier.

It is further contended by the defendants that, the bank should have pushed the execution of the judgment to a *ca. sa.* The case of *Flowers* v. *McMicken*, 2 Mart. N. S. 132, cited by the defendants, if recognized in its full extent, does not cover the present case. There the defendant's contract was that he would be responsible for a note drawn by another, if the plaintiff should, without success, use all necessary steps for its collection from the maker, without delay. In addition to the consideration that the bank had entrusted the business to the attorneys in Alabama, we cannot construe the duty of a mere pledgee so strictly as to say that, he is bound, without the pledgor's request, to incarcerate the debtor, whose obligation is given in pledge. If the pledgors desired to deal thus harshly, they might very easily have taken the weapons of the law into their own hands by paying their creditor, or at least have intimated

44

COMMERCIAL
BANK
*v.*
MARTIN.

their desire for such a course. No such request is shown; nor is it proved that the defendants have sustained any damage, by the not resorting to this extreme remedy.

As regards the debt secured by the *Nailor* note, we are not prepared to say that the court erred. That note remains entirely unaccounted for, though *Nailor*, as is proved, was solvent for a considerable time afterwards. The plaintiffs have either collected it, or have lost its amount by negligence.

It is therefore decreed that, the judgment of the court below be reversed, so far only as relates to so much of the suit of the plaintiffs as claims the recovery of the amount of the note for $3,377 93, due the 3d July, 1840, and in the petition particularly described; and it is further decreed that, upon said note there be judgment in favor of the said Commercial Bank of New Orleans, against the said *Martin, Pleasants & Co.* and against *John Martin,* ―― *Pleasants,* and *Hugh Wilson,* partners of said firm, *in solido,* for the sum of $3,377 93, with interest thereon, from the 3d day of July, 1840, until paid, and the costs in both courts.