## Case No. 12,602.

### SECOND NAT. BANK v. OCEAN NAT. BANK.

[11 Blatchf. 362;[1] 30 Leg. Int. 433.]

Circuit Court, S. D. New York. Nov. 10, 1873.

BAILMENT—GRATUITOUS BAILEE—RECORD—EVIDENCE OF WHAT.

1. A bank applied to another bank to perform the service of loaning some money for it, requesting that a proper charge be made to it for the service. The latter bank made the loan. It had a running account with the former bank, but made no charge, in such account, for such service, and determined to accept no compensation therefor from the former bank, but did not communicate such determination to the former bank. The loan was made on a deposit of securi-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ties with the latter bank, which, while in its custody, were stolen from it. The depositor of the securities, in a suit against him by the former bank, recovered against it a judgment for the value of the excess of the securities beyond the amount of the loan, which it paid. It then brought this suit against the latter bank, to recover the amount of the money loaned and the amount so paid to the depositor, on the ground that the latter bank was negligent in allowing the securities to be stolen. *Held*, that the latter bank was not a gratuitous bailee of the securities, as between it and the former bank.

[Cited in Davisson v. Ford, 23 W. Va. 628.]

2. The record of the suit brought by the depositor of the securities against the former bank was offered in evidence in this suit, on the part of the plaintiff, not only to prove the quantum of damages sustained by the plaintiff in consequence of the loss of the securities, but to prove the liability of the defendant for such loss: *Held*, that such record was not evidence of such liability.

At law.

Lewis Waln Smith, John K. Porter, and John Sessions, for plaintiff.

Noah Davis, for defendant.

SHIPMAN, District Judge.[2] This case was tried by the court, the parties having, by written stipulation, duly filed, waived a trial by jury. The plaintiff is a banking corporation, organized under the national currency act, approved June 3d, 1864 [13 Stat. 99], and located and doing business at Erie, in the state of Pennsylvania. The defendant was, at the several times hereinafter mentioned, a banking corporation, organized under the same act, and located and doing business at the city of New York, and was a correspondent of the plaintiff, the plaintiff keeping an account with said defendant in the transaction of its ordinary banking business in said city of New York. On the 2d of June, 1869, the plaintiff wrote to the defendant, asking if the plaintiff could loan, through the defendant, twenty-five or fifty thousand dollars, on call, on government bonds, as security, to which the defendant answered, that the defendant could make loans on governments, "strictly on call," at 6 per cent. On the 8th of June, the plaintiff wrote to the defendant that Robinson, Cox & Co. would deposit with the defendant $30,000, and requested the defendant to loan the same strictly on call, at 6 per cent., on government bonds. The defendant received, and, on the 10th of June, loaned, said $30,000 to Smith, Randolph & Co., of New York, strictly on call, at 7 per cent., on government bonds, as collateral security, and advised the plaintiff of the making of the loan, and the terms and kind of security, but did not disclose the names of the borrowers, till after the loss hereinafter mentioned had occurred. On the 12th of June, the plaintiff acknowledged the receipt of the advice, and directed the de-

fendant to add $20,000 more to the loan, which sum the plaintiff remitted for that purpose. The defendant received this sum also, and, on the 14th of June, loaned the same to the same parties, on the same terms and like security, and advised the plaintiff that the loan was made, but did not disclose the names of the borrowers till after the loss hereinafter mentioned had occurred. On making these loans, the defendant received from Smith, Randolph & Co., as collateral security, on the first loan, $30,000, at par value, in government bonds, and, on the second loan, $20,000, at par value, in government bonds. These bonds, on their receipt, were placed in an envelope by themselves, marked with the plaintiff's name, and a statement of the loan and the envelope containing the same were put in a tin trunk of the defendant's, called "the government trunk," in which the defendant then, and had for a long time, kept its own government bonds and other like securities, which trunk was deposited in one of the safes in the vault of the bank, called "the burglar-proof safe," in which the said trunk and its contents were, and for a long time had been, accustomed to be kept by the defendant. In said trunk and safe the defendant ordinarily kept, and was accustomed to keep, large amounts of its own government bonds and securities, and like securities deposited with the defendant for safe keeping. Between the night of Saturday, the 26th of June, and the morning of Monday, the 28th of June, 1869, the defendant's bank was broken into, and entered by burglars, who broke and forced open the doors of the vault of the bank, and broke open the safe containing said trunk, and stole and carried away the contents of the trunk and a large amount of securities and money, amongst which were the government bonds deposited for said loans, and upwards of $50,000 of the property of the defendant, all of which were lost. The loans made, as above stated, for the plaintiff by the defendant, were the only transactions of that kind between the parties, all other transactions between them being the ordinary and regular business between banks. In remitting the $20,000, to be added to the former loan, the plaintiff wrote to the defendant: "Charge our account whatever is satisfactory for the above, and we will be satisfied," but the cashier of the defendant, after consulting with the president, directed the book-keeper to make no charge, as the plaintiff kept a large balance with the defendant, and, although the money loaned passed through the account of the plaintiff, to its debit and credit, yet no charge for making such loans was in fact made therein, and the monthly account afterwards, and after the loss, rendered to the plaintiff in due course of business, contained no charge; but the defendant never communicated to the plaintiff in any way, except by this omission to charge therefor in such monthly account, that no charge had been made for negotiating this loan. The defendant had been the cor-

[2] This case was decided by Judge W. D. Shipman as of a date anterior to his resignation of his office, but the formal opinion was not filed until the 10th of November, 1873.

respondent of the plaintiff for about two years. The defendant's bank had been in the same location, and its business carried on in the same building and rooms, and with the same vaults and safes, during that period. The cashier of the plaintiff was, during that period, frequently in the city of New York, and, when in the city, was often at the defendant's bank, and on intimate business relations with the defendant, and knew the general manner in which the defendant's business was conducted, and the mode of keeping its accounts, but not the degree of care it exercised in keeping its own funds and securities, or those entrusted to it by others. After the robbery of the defendant's bank, and on or about the 23d of October, 1869, the plaintiff brought suit against Smith, Randolph & Co., in the supreme court of the state of Pennsylvania, to recover the moneys so loaned to them on said call loans made by the defendant. Smith, Randolph & Co. appeared and defended said action, and, amongst other things, alleged that said bonds delivered by them as collateral to said loans were lost by the negligence of the agent of the plaintiff, the Ocean National Bank, with whom the same were on deposit, by means of the robbery of said bank. Afterwards, and on or about the 13th of January, 1871, the said action was·brought to trial in said court before one of the justices thereof, and a jury; and the question tried therein, and submitted to the jury, was, whether the Ocean National Bank, the agent of the plaintiff in said action, was guilty of negligence or want of ordinary care, in the keeping of said bonds so deposited with it, the court charging the jury that the plaintiff, the Second National Bank of Erie, was, as between it and Smith, Randolph & Co., liable for negligence and want of ordinary care in the keeping of said bonds. The jury found for the defendants on said issue, and rendered a verdict in favor of Smith, Randolph & Co., against the plaintiff, for $9,-991 56, that being the excess of the value of said bonds over and above said loan of $50,-000, upon which verdict judgment was entered in due form against the plaintiff, for $9,-991 56, and $310 50 costs, which judgment was afterwards, and on or about the 21st of March, 1871, paid and satisfied by the plaintiff. The plaintiff produced and proved the record of said judgment, and of the charge of said court, in evidence, on the trial of the action. The defendant herein was not a party of record to said action.

On the evidence given on the present trial, the defendant was not guilty of negligence, as alleged by the plaintiff, unless said record is conclusive evidence of that fact. After the commencement of said suit, and the joining of issue therein, and before said trial, the plaintiff notified the defendant, in writing, as follows: "Second National Bank of Erie, Erie, May 24th, 1870. D. R. Martin, Esq., Dear Sir: On my return home, after an absence of some days, I find your letter of the 12th inst., and note its contents. The suit was continued to December term, which will give counsel ample time to prepare the case. I cannot see but your board could, with equal propriety, decline to entertain the claim of Mr. Stevenson, cashier, for services, as to refuse to pay Mr. Davis. Contrary to the legal advice and opinion of Messrs. Cram, Robinson & Co., after several interviews with yourself and Mr. Davis, your counsel, we adopted your suggestions as to the course to be pursued for the recovery of our money, with the offer made, on your part, to turn in the services of your counsel, free of expense to us, and, in addition, to give us all the assistance you could in the matter personally. You are certainly aware that quite a large portion of the time occupied and expense incurred taking testimony in New York, was for the purpose of meeting and refuting the insinuations made by the defendants' counsel, that he would make it clear before a jury, that the officers or employees of the bank committed the robbery. They may be able to make some such impression upon a jury, from the fact of the loss being so disastrous to depositors, and so small an amount of the bank's property taken. If the instructions .of our letters of June, 1869, to loan, on call, $50,000, on government collaterals, had been complied with, and the collaterals surrendered, on call, to their owners, we would have had no trouble or expense. But, in the suit, we are met by an affidavit of defence, of which I herewith send you a copy. You will notice that the defendants say: 1st, that your bank did not lend them our money; 2d, that, through the gross laches and negligence of the Ocean National Bank and her agents, the collaterals were lost or stolen, and, therefore, the defendants are not bound to repay the loan; 3d, that, on settlement with them, the Ocean Bank recognized the justice of setting off the loss of the bonds against the loan, and that the loan of $50,000 was paid to the Ocean Bank, with interest. Now, these defences and such as these concern the Ocean Bank. If we fail to recover because of any one of them, we will have recourse to your bank. You already have notice to intervene in this suit, but, in view of your letter, we repeat our request, that the Ocean Bank intervene, with all the evidence, counsel and other means it deems proper to sustain this case against this defence. Our bank will do the best it can to sustain this suit and recover the money, but ask you to give notice to your directors of our position. As to expenses, we should not pay any of the court expenses, or evidence, or counsel, with such grounds of defence as exist in this case. But, in view of the misfortunes of the Ocean Bank, our bank will easily be induced to be liberal in settling the costs. We will not abate our energy to bring this suit to a successful result, and hope to receive the same reassurance from your bank. I note the arrest of O'Kell, on sus-

picion of being connected with the robbery of the Norwalk National Bank. I would not be at all surprised if it comes to light that he is the man that planned and executed the robbery of the Ocean. There are many circumstances that look in that direction. The depositing of his box in the vault, gave him some opportunity to get the combinations of your lock, and his box not having been disturbed, are straws that show which way the wind was blowing. Very respectfully, Wm. C. Curry, Cashier." "Philadelphia, December 7th, 1870. C. S. Stevenson, Esq., Prest. Ocean Nat. Bank of the City of New York, Dear Sir: The suit of the Second National Bank of Erie v. Smith, Randolph & Co., pending in court here, for the recovery of certain loans made through your bank, as agent, is down and marked for trial on the 19th inst. You and your counsel are aware of the evidence which has been taken in said suit upon both sides, and the purpose of now writing is to afford the Ocean Nat. Bank an opportunity to produce any other testimony upon the trial which she may desire; and the purpose is also to put the Ocean Nat. Bank upon notice, that, if the Second Nat. Bank of Erie should fail to recover against S., R. & Co., in the present suit, it will be by reason of the negligence of the Ocean Bank, and in which case the Erie Bank will hold the Ocean Bank for the amount of the said loans and interest. Very respectfully, Lane & Roney, Attorneys for Second Nat. Bank of Erie." After the recovery of said verdict and entry of judgment thereon, the plaintiff served on the defendant a notice in writing, offering to allow the appeal of said suit by the defendant, and to transfer the management and conduct of such appeal to the. control of the defendant and its attorneys. While said suit was pending, the defendant, at the request of the plaintiff, furnished, at its own expense, and paid, an attorney and counsellor, (he being the regular counsel of said bank, and familiar with the facts and details of said robbery,) to assist and advise in taking the testimony in the city of New York, by deposition, before a commissioner, and also to be present and assist in the trial of said cause, but the defendant, at all times, denied its liability for the loss of said bonds, and while the defendant did not, in fact, take charge of, or control, the said suit in the supreme court of Pennsylvania, the defendant did unite with the plaintiff in the trial of said cause, and rendered all the aid and assistance in its power. The plaintiff, at all times, claimed and insisted to the defendant, that the latter would be liable to the former in case Smith, Randolph & Co. should recover of the plaintiff for the loss, or should succeed in setting off the amount of the loss against the sum loaned to them. The defendant recommended the plaintiff to bring the said suit in Pennsylvania. The amount of money deposited by the plaintiff with the defendant amounts, with interest to November 10th, 1873, to $65,446 50. The judgment recovered by Smith, Randolph & Co. against the plaintiff amounts, with interest, to $12,-281 74. This makes a total of $77,728 24. The plaintiff has sustained damages, by reason of said loss of said bonds, in the amount of the sums loaned and the amount so paid upon the verdict and judgment in the supreme court of Pennsylvania, including interest to November 10th, 1873, to the amount of $77,728 24.

(1.) The claim made by defendant, on the argument, that, upon the facts above found, the Ocean Bank must be deemed, in judgment of law, a gratuitous bailee, as between it and the plaintiff, does not command my assent. The plaintiff accompanied its application to the defendant to perform the service of loaning the money with the remarks: "Charge our account whatever is satisfactory for the above, and we will be satisfied." It is true, that the president and cashier of the defendant decided not to charge anything for the service, inasmuch as the plaintiff kept a large balance with the defendant. This was very natural. The plaintiff had long been the correspondent of the defendant, and, as this was a single transaction, of this particular character, attended with slight trouble and no unusual risk, the defendant might well execute the agency free of charge. But, as the plaintiff coupled the request to transact the business with a promise to pay a reasonable charge therefor, and the defendant accepted the agency without communicating to the plaintiff the fact that it declined compensation, the plaintiff had a right to assume that it accepted the position of an agent for hire. It is too late, after the enterprise has miscarried, for the defendant to repudiate this relation, and set up the claim that it was a. mere voluntary or gratuitous service which it undertook to perform, and thus shelter its miscarriage under the rule of inferior duty which the law applies to agents who act without compensation. The argument of the defendant on this point was, of course, to maintain that it was a mere voluntary agent, rendering only a gratuitous service, and, therefore, only liable for gross negligence. But, I am satisfied that this claim is unsupported by the facts found.

(2.) A graver and much more difficult question arises on the effect to be given to the record of the suit in Pennsylvania, which the plaintiff proved and gave in evidence. This record was undoubtedly admissible to prove the quantum of damages which the plaintiff has suffered in consequence of the loss of the bonds. The authorities on this point, which will hereafter be cited, seem to be pretty uniform and decisive. But, the plaintiff claims that it is conclusive not only as to the measure of damages but as to the liability of the defendant in this action. As a general rule, a judgment rendered in a suit between two persons cannot affect the rights of a third,

unless the latter is a privy in blood, estate or law. Case v. Reeve, 14 Johns. 79. There is no privity between the present defendant and either of the parties to the record offered in evidence, arising out of their relations to the subject-matter of this controversy. The present defendant was simply the agent or servant of the present plaintiff, in loaning the money to Smith, Randolph & Co., and in receiving and holding the custody of the bonds pledged to secure the repayment of the loan. In doing this, it was, as we have already seen, the agent of the plaintiff. The bonds having been stolen while in the custody of the Ocean Bank the borrowers refused to repay the loan unless their bonds were returned to them, and the Erie Bank brought suit against them, to recover the amount. They set up, by way of defence and counterclaim, that the bonds were lost through negligence and want of ordinary care on the part of the Erie Bank, acting through its agent, the present defendant, and recovered judgment for the amount by which the value of the bonds exceeded the amount of the debt. The court, in that case, held, that, the question of negligence being made out, the loss was chargeable to the creditor, and constituted an equitable claim which extinguished the debt, and that the debtors, Smith, Randolph & Co., were entitled to recover the excess. The result, therefore, was a judgment by a third person against a principal, for the misconduct of his agent. The precise question to be disposed of here is, whether such a judgment is conclusive evidence for the principal, in a suit brought by him against his agent, to recover the damages to which the former has been subjected by the negligent manner in which he executed his agency. No case has been cited which sustains this proposition. The case of Kinnersley v. Orpe, 2 Doug. 517, which has been so often cited and commented upon by judges and text-writers, does not support the plaintiff's claim on this point. That was a suit against the agent, for an act commanded by the principal. On the trial, a judgment against another agent of the principal, for a similar act, also commanded by the latter, was produced in evidence. The first suit was trespass for fishing in the plaintiff's fishery. The defendant justified as the servant of one Cotton, setting up the right of the latter to the fishery in question. Judgment having gone for the plaintiff, a new trial was sought and denied. Cotton, in order to have another trial of the same question, involving the same title, commanded another servant to repeat the trespass. Suit was again brought and, on this second trial, the same justification was set up, and the record of the former judgment was produced in evidence. No other proof was offered. The plaintiff claimed that this record was conclusive proof of his exclusive right to the fishery, and the judge so held. On a rule to show cause why a new trial should not be granted, the court reversed the decision and held that it was evidence, but not conclusive. Even this latter proposition has been doubted, and only assented to on the ground that, in point of fact, Cotton was the real defendant in both cases, and the act which constituted the ground of the second action was committed by his direction, for the express and only purpose of again testing the legal right involved in the first. For all substantial purposes, the second suit stood upon the same ground, as both had been brought against the principal instead of his servant. Case v. Reeve, 14 Johns. 79, 82. A question involving the principle now under consideration has often arisen on objection to the testimony of witnesses who sustained the relation of master or servant to one of the parties, the objection being based on the ground that the witness would be liable over in the event of a recovery. The case already cited from Johnson is an example. McClure v. Whitesides, 2 Cart. (Ind.) 573. See, also, Gevers v. Mainwaring, Holt, N. P. 139; Miller v. Falconer, 1 Camp. 251. In Green v. New River Co., 4 Term R. 589, the court of king's bench held, that verdicts against masters were evidence in actions brought by them against their servants, as to the quantum of damages, but not as to the fact of the injury or negligence. In the notes to Duchess of Kingston's Case, 2 Smith, Lead. Cas. (5th Am. Ed.) 685, after an elaborate review of the authorities, it is said, that: "A judgment is always admissible as proof of the existence or extent of the obligation it imposes on one person, even when incompetent to prove that the burden ought to be shared by another. When, therefore, a recovery is had against a master for the tortious act of his servant, or against a surety in consequence of a breach of contract by the principal, it will be evidence of the amount of loss resulting from the default, although not that the default was committed." Whether such a recovery would be conclusive evidence of the amount of damages we need not stop now to enquire, as there is no dispute, in the present case, on that point.

I am well aware that there are cases which hold that, where one person is responsible over to another, either by positive law or express contract, and the latter is cited in to contest a suit, the judgment, if obtained in good faith, will be conclusive against him. Bank of Owego v. Babcock, 5 Hill, 152; Littleton v. Richardson, 34 N. H. 179. These cases, are, however, clearly distinguishable from those involving the liability which arises out of the relation of principal and agent.

It has been decided that a judgment in an action of trespass against the principal for the act of his servant, rendered upon a trial of the merits of the case, is a bar in a suit against the servant for the same act. Emery v. Fowler, 39 Me. 326. But the principle involved in that case, and others of a similar character, is very different from the one

now under consideration. As between a third party and a principal and agent, the last two constitute but one legal entity, there being a complete legal absorption of the agent in the principal. The act for which redress is sought, although done by the agent, is the act of the principal, and, where the latter is exonerated, the liability of the agent is extinguished. But it is obvious that a judgment against the principal cannot settle the rights or liabilities of the principal and agent to each other, growing out of their legal relationship. These rights and liabilities may depend upon mutual relations arising out of the terms of the agency, which in no way interest third persons, and which would not be drawn into, or in any way settled by, a recovery against the principal. The very act of the agent upon which the liability of the principal to a third person rests as a ground of recovery, may be done with the consent, or connivance, or express command of the principal. It follows, from these views, that the judgment of the supreme court of Pennsylvania, in favor of Smith, Randolph & Co., against the present plaintiff, is not evidence that the defendant is liable in this action.

Judgment must, therefore, be rendered for the defendant, with costs.