| 23 | 617 |
| 38 | 153 |
| 38 | 240 |
| 23 | 617 |
| 48 | 13 |
| 23 | 617 |
| f61 | 600 |

# WHEELING.

## DAVISSON *v.* FORD.

Submitted June 19, 1883—Decided March 22, 1884.

1. When the performance of the defendant's agreement is a condition precedent to his right to demand the remuneration, it is not necessary in a suit brought against the defendant for the non-

performance of his agreement for the plaintiff to allege in his declaration, that the defendant has been paid the remuneration. (p. 626.)

2. It is neither necessary nor proper in an action of *assumpsit* for the plaintiff to allege the non-payment by the defendant of the damages resulting from the breach of the contract, when the contract is not to pay a debt. (p. 626.)

3. When there is a dispute between parties, and one of them claims, that the other is liable to him, and there is some foundation for such claim, and to settle this controversy one party promises to pay money or to do some act for the benefit of the other, such promise is based on a sufficient consideration and may be enforced by suit. (p. 627.)

4. But if there is no foundation for such claim of liability, then the promise made to settle this assumed liability has no sufficient consideration to sustain it and no suit can be based on such promise. (p. 627.)

5. On the trial of a suit based on such promise proof, that the liability of the defendant, who made such promise, had no foundation, will defeat the plaintiff. (p. 627.)

6. In framing a declaration on a special contract it is necessary to set out the whole consideration, on which is based the defendant's promise, and it must at the trial be proved as stated, or the plaintiff must fail because of the variance. (p. 628.)

7. In framing a special count in *assumpsit* based on such a consideration, as is stated in the third point of the syllabus, the plaintiff must by way of inducement state a case, which shows at least in a general way that the defendant was liable to him, when such liability is the consideration for the promise, the breach of which is the basis of the action. (p. 630.)

8. In an action of *assumpsit* on a special contract to recover damages the entire consideration and the entire act to be done must be stated in the declaration ; and if the plaintiff's proof clearly and materially varies from the contract stated in the declaration, such proof should on motion of the defendant be excluded from the consideration of the jury. (p. 628.)

9. If the contract stated in the declaration is that for the dead carcasses of certain cattle sold to the defendant by the plaintiff the defendant would pay to the plaintiff the value of said cattle before they had been killed, and the evidence showed that the defendant for the carcasses of said dead cattle promised to pay to the plaintiff thirty dollars per head, this is a fatal variance between the contract as stated in the declaration and the proof, and the plaintiff cannot recover on such proof. (p. 631.)

10. If however there had been a common *indebitatus assumpsit* count
    in the declaration, the plaintiff could have recovered on such
    proof; for as by the terms of such special contract everything
    had been performed except the payment of this thirty dollars
    per head for such cattle, this money could be recovered under a
    general *indebitatus assumpsit* count.   (p. 632.)

11. If upon an action in *assumpsit* against one person the proof is,
    that the promise sued on was made by the defendant and an-
    other jointly, the plaintiff cannot recover.   (p. 633.)

GREEN, JUDGE, furnishes the following statement of the
case:

At May rules, 1881, Reuben Davisson filed in the circuit
court of Taylor county the following declaration in *assumpsit*
against Marshall Ford:

"STATE OF WEST VIRGINIA, TAYLOR COUNTY, SS.:

"*In the Circuit Court, to May Rules,* 1881.

"Reuben Davisson, plaintiff in this action, complains of
Marshall Ford, defendant, of a plea of trespass on the
case upon promises, for that heretofore, to-wit, on the —
day of November, 1880, at ——, to-wit, at the county afore-
said, the said plaintiff and the said defendant entered into
a certain verbal contract, whereby in consideration that
the said plaintiff then and there undertook, promised and
agreed to and with the said defendant to pay him, the
said defendant, the sum of fourteen dollars per stack for
each of seven stacks of hay, then in the meadow or field of
the said defendant in the said county of Taylor, and also that
he, the said plaintiff, then and there promised, undertook
and agreed to, and with the said defendant that he, the said
plaintiff, would also pay him, the said defendant, the like sum
of fourteen dollars for one other stack, then also in the
meadow or field of the said defendant, in case the said
defendant should have such other stack to spare; and that
the said plaintiff also promised, undertook and agreed to and
with the said defendant that he, the said plaintiff, would
cause to be driven and placed in the said defendant's posses-
sion and inclosure a sufficient number of the cattle of the said
plaintiff to eat up and consume the said seven stacks of hay,
or the said eight stacks in case the said defendant should

thereafter determine to spare the additional stack as aforesaid, by and against the first day of March then next following; the said defendant on his part undertook, promised and agreed to and with the said plaintiff that he, the said defendant, would sell the seven stacks of hay to the said plaintiff, and also the said eighth stack in case he, the said defendant, should have the said additional or eighth stack to spare; and that said defendant would feed the same to the said cattle of the said plaintiff in and upon the field or meadow of the said defendant, which the said plaintiff agreed and contracted to place in the possession and in the field or meadow of the said defendant as aforesaid, for the purpose of eating and consuming the said hay as aforesaid, at and for the said price of fourteen dollars per stack for the said seven stacks, and at the same price for the additional or eighth stack in case defendant should have such additional or eighth stack to spare. And the said plaintiff avers that in pursuance of said contract he delivered to the said defendant and placed in defendant's field, custody and possession, on or about the — day of December, 1880, and the said defendant then and there received and took into his field, custody and possession, for the purpose aforesaid, twenty-three head of the cattle of the said plaintiff, which plaintiff avers was a sufficient number to eat and consume said seven stacks of hay, and also the additional or eighth stack in case defendant should spare the said additional stack, against the said first day of March, 1881. But plaintiff avers that the said defendant, not regarding his said promise, undertaking and agreement, but artfully contriving to injure the said plaintiff in that behalf, did not nor would sell to the said plaintiff and feed or cause to be fed to plaintiff's said cattle, either in the field or meadow of the said defendant, or elsewhere or otherwise, the said seven stacks contracted for as aforesaid, but, on the contrary thereof, and after having fed to said cattle a small part of the said seven stacks, to-wit, two stacks thereof, leaving five stacks of the same uneaten and unconsumed, and long before the first day of March, 1881, to-wit, on the 15th day of January, 1881, he, the said defendant, without the knowledge of the said plaintiff, caused said cattle to be turned out of the defendant's said meadows and fields and driven away from his

premises, and ever afterwards refused to take or receive said cattle, or any of them, into his said inclosures, or to feed them or cause or permit them to be fed the said remainder of said seven stacks of hay, by means whereof, the said plaintiff says that he hath been damaged in the sum of five hundred dollars.

"And for that also, heretofore, to-wit, on the 15th day of January, 1881, at the county aforesaid, the cattle of the said plaintiff being in the lawful custody and inclosure of the said defendant under and by virtue of a certain contract before that time made and entered into by and between the said plaintiff and the said defendant, whereby the said cattle of the said plaintiff were to be kept in the inclosed field of the said defendant to be there agistered and fed from and after the — day of December, 1880, until the first day of March, 1881, for a certain reward to be paid by the said plaintiff to the said defendant; and whereas, the said defendant, without the knowledge or consent of the said plaintiff, and in disregard of the contract aforesaid of the said defendant and of his duty, did, on the said 15th day of January, 1880, cause and suffer said cattle to be turned out of his inclosed fields and into the woods, commons, lanes and uninclosed places, by reason of which the said cattle wandered upon the track of the Baltimore and Ohio railroad and were there run upon and against and over by the engines and cars of the said railroad lawfully being and running thereon, whereby thirteen of the said cattle, of the value of four hundred dollars, were bruised, wounded, killed and mangled were, to-wit, on the day aforesaid, lying upon and near said railroad track; and the said defendant, in consideration of the contract aforesaid, and that the plaintiff would sell and deliver to him, the said defendant, the said bruised, wounded and dead cattle and permit him, the said defendant, to have and use them as and for his own, then and there contracted and agreed to and with the said plaintiff to pay him, the said plaintiff, the value of the said thirteen head of cattle as the same were before they had been bruised, wounded and killed as aforesaid, and the plaintiff then and there sold and gave to the said defendant the said thirteen head of cattle for the defendant to take, have and use as for his own; and the said defendant there-

upon took said thirteen head of cattle and appropriated the same to his own exclusive use and benefit, but although said cattle were, before being bruised, wounded and killed as aforesaid, of the value of four hundred dollars, yet the said defendant, not regarding his said promise and undertaking in this count mentioned, has not paid to the said plaintiff or otherwise the said sum of four hundred dollars, the value of said cattle as aforesaid, but has hitherto wholly failed and refused to pay the same or any part thereof, or any other sum, and still refuses, to the damage of the said plaintiff of five hundred dollars. And therefore plaintiff brings his suit, &c.

"JAMES MORROW, JR., *P. Q.*"

The defendant also filed his plea of *non-assumpsit*, on which issue was joined and tried by a jury, who on November 22, 1881, found a verdict for the plaintiff for three hundred and fifty-seven dollars and sixty cents, and thereupon the court rendered a judgment for the plaintiff against the defendant for that amount with interest thereon from that date. During the progress of the trial the defendant took three bills of exceptions, as follows:

### BILL OF EXCEPTIONS NO. 1.

"Be it remembered that on the trial of this cause, after the jury were sworn to try the issue joined, and after the evidence was concluded and before the argument thereof before the jury, the defendant moved the court to exclude from the evidence to be considered by the jury the following evidence of the plaintiff introduced by him during the trial to maintain the issue on his part—that is to say:

"1st. The following portion of the testimony of the witness, Reuben Davisson, in which he said that on Sunday, the 16th day of January, 1881, I went to the residence of defendant in company with my two sons, Ithamar and Floyd Davisson, and one Frank Warder, and found him lying before the fire upon a trundle bed appearing to be sick. I spoke of the loss of my cattle, and he asked me what I estimated them at, and I replied thirty dollars per head, and he agreed to pay me thirty dollars per head for the thirteen cattle that were killed by the cars of the B. & O. R. R. Co. at the railroad

crossing at Webster, on the 15th of January, 1881, and he was to have the dead bodies of said thirteen cattle and their hides, and it was further agreed that if one other cattle that was injured should get well, that I would allow defendant fifty dollars therefor. The defendant agreed to pay me thirty dollars per head for the cattle killed, and I understood the whole matter was settled between us by that arrangement, and I expected to have no more trouble about it. I went home and on the next morning wrote a note payable to myself for three hundred and ninety dollars, and sent it to defendant by my son, Floyd Davisson, and the defendant refused to execute it. The defendant and his brother, Columbus Ford, promised to meet me at Webster the next morning and execute to me their note, they not having the money to pay me. Columbus Ford came to Webster next morning and declined to execute the note. No note was ever executed. I sent note to defendant by Columbus Ford and by my son Floyd. Said note was never executed or returned to me.

"2d. And the same portions of the evidence of the witnesses, Floyd Davisson, Ithamar Davisson and Frank Warder, which was substantially to the same effect and tending to prove the same facts as were testified by said Reuben Davisson.

"Which motion of the defendant the court overruled and refused to exclude from the consideration of the jury the said evidence. To which ruling of the court the defendant excepts, and prays that his bill of exceptions be signed and made a part of the record, which is now here accordingly done.

"WILLIAM T. ICE."

BILL OF EXCEPTIONS NO. 2.

This bill of exceptions sets out all the evidence in the case, so much of which as is deemed necessary will be stated in the opinion, and then proceeds thus: "The defendant moved the court to give these six instructions:

"No. 2. If the jury believe from the evidence that the defendant failed to feed to the plaintiff's said cattle any of the hay in controversy, the plaintiff cannot recover in this action the value of any greater amount thereof than the plaintiff paid for unless they further believe from the evidence that

the plaintiff was obliged to purchase and did purchase hay elsewhere at a loss to himself, and then the plaintiff can only recover the amount of such loss.

"No. 3. Unless the jury believe from the evidence that the defendant agreed with the plaintiff to take the twelve or thirteen dead cattle and pay him their value as they were before they were killed, and not thirty dollars per head, they must find for the defendant as to said cattle.

"No. 4. If the jury believe from the evidence that the defendant and Columbus Ford, by special contract, agreed to pay the plaintiff thirty dollars per head for the twelve or thirteen head of cattle in the declaration mentioned, they must find for the defendant as to said cattle.

"No. 5. If the jury believe from the evidence that the defendant by special contract agreed to pay the plaintiff thirty dollars per head for the twelve or thirteen head of cattle in the declaration mentioned, they must find for the defendant as to said cattle.

"No. 7. If the jury believe from the evidence that the only promise of the defendant to pay for the cattle in controversy was his joint promise with his brother, Columbus Ford, they must find for the defendant as to said cattle.

"No. 9. If the jury believe from the evidence that the defendant promised to pay the plaintiff thirty dollars per head for said thirteen head of killed cattle, and not to pay the value thereof as they were before they were wounded, injured and killed, they must find for defendant as to said cattle.

"But the court refused to give the said six additional instructions, or any of them, to the jury. To which opinion of the court refusing said six additional instructions, the defendant, by his counsel, excepted, and tendered this his bill of exceptions, which he prays may be signed and made a part of the record, and the same is accordingly done.

"WILLIAM T. ICE."

Bill of exceptions No. 3 was to the refusal of the court to grant a new trial on the ground that the verdict was contrary to the evidence, setting out all the evidence in the case.

From the final judgment the defendant obtained a writ of error and *supersedeas.*

*Martin & Woods* for plaintiff in error.

*James Morrow, jr., J. W. Mason* and *J. T. McGraw* for defendant in error.

GREEN, JUDGE :

The first question arising in this case is: Did the circuit court err in overruling the demurrer to the declaration and to each count thereof? The first count, it is insisted by the counsel for the defendant below, was fatally defective, first, because it fails to aver performance by the plaintiff; and secondly, because it fails to allege any consideration for the promises of the defendant stated in this count; and, thirdly, because it does not aver the non-payment of the damages claimed in the count. The count is good. The following consideration is stated in it: "In consideration that said plaintiff then and there undertook, promised and agreed to and with the said defendant to pay him, the said defendant, fourteen dollars per stack for each of seven stacks of hay; and also that he, the said plaintiff, then and there promised, undertook and agreed to and with the said defendant to pay him the like sum of fourteen dollars on certain conditions named; and that the said plaintiff also promised, undertook and agreed to and with the said defendant, that he, the said plaintiff, would cause to be driven and placed in the said defendant's possession and inclosure a sufficient number of cattle, &c.; the said defendant undertook and agreed to and with the plaintiff, &c." The count proceeded then to set out in detail the promises of the defendant, the breach of which are complained of in the count. These several promises made by the plaintiff to the defendant are a good and sufficient consideration for the promises made by the defendant to the plaintiff. This is so fundamental that it is unnecessary to cite cases, where a promise made by the plaintiff to the defendant has been regarded as a matter of course a consideration for the promises of the defendant to the plaintiff the basis of the action, but many such authorities are cited in Parsons on Contracts vol. 1 p. 448. But it is claimed, that there is no allegation, that the plaintiff performed the promises, which he made to the defendant,

which were the consideration of the defendant's promises to the plaintiff. This count of the declaration does allege the performance by the plaintiff of all of his promises made to the defendant, except that it does not allege the payment to the defendant of the sum of fourteen dollars per stack for the defendant's hay, which was by the defendant to be fed to the plaintiff's cattle. But this allegation would have been unnecessary and improper, because by the agreement as stated in the declaration, no time being agreed on when it was to be paid, it was not payable, till the defendant performed what he agreed to do, feed this hay to the plaintiff's cattle, and this he never did according to the allegation of this count. See *Pennsylvania, Delaware and Maryland Navigation Company* v. *Dandridge*, 8 Gill & J. 248 (29 Am. Dec. 543); *Lewis* v. *Weldon*, 3 Rand. 79; *Lent* v. *Padelford*, 10 Mass. 236. The last case shows that the consideration in this count is set forth with more precision than the law required.

There is nothing in the claim of the defendant's counsel that the first count should have alleged the non-payment of the damages claimed. It is true that in Virginia and West Virginia it has been decided, that where an action is brought for a debt, whether it be brought in the form of debt or *assumpsit*, the declaration must allege the non-payment of the sum of money claimed, but even this, though settled law in this State, is regarded elsewhere as unnecessary at least in debt, and the decisions in Virginia and West Virginia, though they firmly establish the law here, seem not consistent with correct rules of pleading. (*Douglass* v. *Central Land Company*, 12 W. Va. 508 *et seq.*) But nowhere has it been held, or, so far as I know, even suggested that in an action of *assumpsit* based on a promise not to pay money but to perform some act, that it was either necessary or proper in the declaration to allege the non-payment of the damages. Such an allegation, it seems to me, would be absurd; for the object of the suit is to recover the amount of these very damages, when they shall have been ascertained by a jury.

Before considering the demurrer to the second count in this declaration we should have a clear conception of what in law constitutes a sufficient consideration to support a promise. If there be a dispute between parties, in which one of the

parties not only makes a *bona fide* claim against the other but
there is in law and fact some foundation for his claim, though
whether it be well founded may be doubtful, and the party,
who is thus claimed to be subject to a liability, to settle the
dispute and avoid litigation, agrees to pay the other party a
sum of money or makes to him a promise to do anything else,
such promise is based on a sufficient consideration and may
be enforced.   (*Zane's Devisees* v. *Zane*, 6 Munf. syl. 2 p. 406;
*Longridge* v. *Dorrille*, 5 B. & Ald. 117; *Blake* v. *Peck*, 11 Vt.
483; *Truett* v. *Chapline*, 4 Hawks 178; *Taylor* v. *Patrick*, 1
Bibb 168; *Brown* v. *Sloan*, 6 Watts 421; *Stoddard* v. *Mix*, 14
Conn. 12; *Wilbur* v. *Crane*, 13 Pick. 284; *Union Bank* v.
*Geary*, 5 Pet. 99.)   But to make such consideration good it
is not only necessary, that the dispute should be one in which
one party sets up that there was a liability on the other, but
it it be assumed that such liability exists when in fact or law
there is no foundation for such liability, a promise made by
the party, who is thus claimed to be liable, but who clearly
is not liable either in law or equity, would be a promise
made on no valuable or sufficient consideration, and it could
not be enforced by suit.   (*Cabot* v. *Haskins*, 3 Pick. 83;
*Gould* v. *Armstrong*, 2 Hall [N. Y.] 266; *Lowe* v. *Weatherley*,
4 Der. & B. 212; *Jones* v. *Ashburnham*, 4 East. 455; *Smith* v.
*Algar*, 1 B. & Ad. 603; *Martin* v. *Black's Ex'or*, 20 Ala. 309;
*New Hampshire Savings Bank* v. *Colcord*, 15 N. H. 119, and
*Wade* v. *Simeon*, 2 C. B. 548.)   But as before stated mere
proof, that the liability is doubtful, will not render the con-
sideration insufficient.   The liability of the party making
such promise must be shown to have no foundation.

   The consideration, which is set forth in a declaration to
support the defendant's promises sued upon, is not to be
regarded as a mere inducement or preamble; but it forms
an essential portion of the contract, on which its validity
depends.   It must therefore be truly stated and is required
to be proven at the trial as stated, or the plaintiff must fail
because of the variance.   If an entire consideration be stated
in the declaration as the basis of the defendant's promise,
the entire consideration stated and not merely a portion of
it must be proven at the trial, or the plaintiff must fail be-
cause of the variance.   Or if the consideration named in the

declaration consists of several different things, and but one of these things is proven to be the consideration, the plaintiff must fail at the trial because of the variance. (*Leads* v. *Burrows*, 12 East 1; *Cunningham* v. *Shaw*, 7 Barr 401; *Curley* v. *Dean*, 4 Conn. 259). But if in a declaration several considerations are stated as the basis of the defendant's promise sued upon, some of which are void or frivolous, this is no ground for demurrer, and he may recover, though he fails to prove the void or frivolous considerations, if he proves those considerations which are good.

The defendant in this case according to the allegations of this count of the declaration was a bailee of the cattle of the plaintiff, and the bailment was one founded in the mutual benefit of each party. In such case it is the duty of the bailee to take ordinary care of the thing bailed; he must use ordinary diligence to preserve the property entrusted to his care, where each party is to receive benefit from the bailment. It follows therefore, that the bailee in such case is liable for ordinary neglect in not keeping safely the property entrusted to him. (*Commercial Bank of New Orleans* v. *Martin*, 1 La. Ann. 344; *Maury* v. *Coyle*, 34 Md. 238; *Third National Bank* v. *Boyd*, 44 Md. 47; *Scott* v. *Crews*, 2 S. C. 522; *Girard Fire Insurance Co.* v. *Marr*, 46 Pa. St. 504; *Second National Bank* v. *Ocean National Bank*, 11 Blatchf. 362).

It is obvious, that the pleader designed as the first consideration for the promise of the defendant in this count to set forth, that the defendant had rendered himself liable to the plaintiff, because as a bailee of the class above specified he had failed to take ordinary care of the cattle intrusted to him, and they had been injured by reason thereof, by being accidentally run over by an engine of the Baltimore and Ohio Railroad Company, whose track they were upon through neglect of the defendant as such bailee, and as such bailee he was liable to the plaintiff for the damages, which he had sustained by such injury to his cattle; and a dispute having thus arisen, to avoid litigation the defendant promised the said plaintiff to pay him the value of said cattle, as the same were before they were injured and killed. The above allegations are what was necessary to set forth in such count, in order

to render the first consideration named in that count a suffi-
cient consideration to sustain the promise in that count.
That the defendant was a bailee of the class we have named
is set forth distinctly in the beginning of the count; and
there was no necessity, as claimed by the counsel for the
defendant below, that the contract, by which he became such
bailee, should be set forth with any more accuracy than is
here done.    It was not the contract sued on but a mere pre-
amble or inducement to the consideration for the promise
sued on, and such inducement need not be set out with great
certainty but only in a general manner.    (4 Rob. Practice
214; 4 Minor's Institutes 577.)    This statement that the de-
fendant was a bailee of the class of which we have been
speaking, being thus properly made, it should have been fol-
lowed by a statement showing, that the defendant as such
bailee had failed to take ordinary care of said cattle, and that
they had been injured by reason thereof by being run over
by an engine of the Baltimore and Ohio Railroad Company
accidentally, upon whose tract they were through the neglect
of the defendant as such bailee; and that as such bailee he
thus became liable to the plaintiff for the damages done to
said cattle by being so run over and killed; and a dispute
between the plaintiff and defendant having thus arisen, to
avoid litigation the defendant made the promise in the count
named.

But the statements in this count of the declarations fall
short of what is necessary to make this first consideration
sufficient to support the promises.    The statements of the
manner, in which the cattle got on the track of the Baltimore
and Ohio railroad, fail to show, that the defendant had not used
ordinary care as such bailee to preserve these cattle, and it is
not alleged, that he did not use this ordinary care; had this
been alleged it would it seems have been unnecessary to state
more definitely the manner in which they got on the track.
It does not appear, that the turning out of the cattle stated
was an imprudent act or an act of negligence, for many pru-
dent persons so turn out their cattle, and it may be that the
place, where they were thus turned out, was miles away from
the railroad track, and there was no probability, that they
would wander on to the track.    It should at least have been

alleged that this act was negligence or carelessness. There is also a failure to allege that they were killed on the track by unavoidable accident, which would have been proper to state; for if it should be shown, that they were killed in consequence of the negligence of the company, it would be the primary cause of the killing of the cattle, if they had merely wandered on the track when unenclosed. (*Blair* v. *Chesapeake & Ohio Railroad Co.*, 9 W. Va. 252). If this was the case, the railroad company, it seems to me, alone would be responsible for the damages done if it was the result of their carelessness. There is not even an attempt to set out the other requisites to make this first consideration good, as we have stated them above, but the declaration in this second count omitting them simply says: "The said defendant in consideration of the contract aforesaid promised, &c." Now I cannot conceive how this previous contract of the defendant with the plaintiff could be a consideration for a new promise made by the defendant. I suppose he meant to say, that in consideration of the liability, which he had incurred by the breach of this contract. But he has not said so; and if he had, he has so described the breach, that, it seems to me, he fails to show that any liability for the loss of these cattle has been incurred by the defendant. In such case the plaintiff should by way of inducement state at least in a general way a case, which shows a liability on the part of the defendant. But this he has entirely failed to do and the promise therefore so far as based on this first consideration was a nullity, the consideration being insufficient to sustain the promise.

But a second consideration is alleged in this count: "That the plaintiff would sell and deliver to the defendant the bruised, wounded and dead cattle." The promise based on this consideration is: "That he would pay to the plaintiff the value of the said cattle as the same were before they had been bruised, wounded and killed." I say this promise is based on this consideration alone, because the first consideration being as stated a void consideration, while it is not ground for demurrer, is to be regarded as mere surplusage; and the second count is to be regarded precisely as if this first consideration had not been mentioned,

and the last consideration above quoted was the only consideration for this promise.   So regarding it was it a sufficient consideration?   If the animals killed had been horses instead of cattle, and the dead bodies of these horses had been sold to the defendant, and he had promised to pay therefor the price of living horses, it seems to me clear, that the consideration would be insufficient to support such promise.   The value of a dead horse is simply his skin, and would not be a sufficient consideration to support a promise to pay the value of a living horse, which would in fact be a promise to pay for a part the value of the whole.   It would be as though one promised another in consideration of ten dollars to pay him at once one hundred dollars.   This in effect is a promise to give him ninety dollars and is a *nudum pactum*.   But I am not prepared to say that the promise to pay for the dead carcasses of beeves the value of the living beeves would be a promise based on an insufficient consideration; for the dead bodies of beeves may be worth as much or more than the living beeves.   If the fact were that these dead bodies were like the bodies of horses in this particular case worthless except for their skins, and this could properly be set out in a plea and was so set out, it would be a good defence to this second count, as it would show that the consideration was not a sufficient consideration to support the promise named in the second count. But this instead of being set out in a special plea could be proven under the general plea of *non-assumpsit*.   But the court could not judicially know, that the dead bodies of these beeves were valueless except for their skins and therefore the circuit court did not err in overruling the demurrer to this second count as well as to the first count.

I will now consider, whether there were any errors committed in the trial of this case.   The first bill of exceptions as well the third, fifth and ninth instructions asked by the defendant and refused by the court set out in the second bill of exceptions raises the question, whether under this second count in this declaration the plaintiff could introduce proof, that the defendant agreed to take the cattle after they were wounded and killed and pay for them thirty dollars per head, and if on such proof the jury could find a verdict on this second count for the plaintiff.   It seems to me ob-

vious, that no such proof could be properly introduced under this count, and if introduced, it ought to have been disregarded by the jury, and upon it they could base no verdict for the plaintiff. The contract so proved was obviously and substantially a different contract from that set out in the second count. In *James & Nicholls* v. *Adams*, 16 W. Va. 245, this Court decided, that if in an action on a special contract the plaintiff by his evidence proves a contract, which materially and manifestly differs from that stated in the declaration, the court on the defendant's motion should exclude such evidence from the jury. See same case 8 W. Va. 568. The counsel for the plaintiff below attempts to escape from the effects of this universally admitted principle by insisting that this second count is not a special count but is the common count of *quantum valebant*. But this is obviously not so. The *quantum valebant* count alleges, that the plaintiff sold and delivered to the defendant goods in consideration whereof the defendant promised to pay what they were reasonably worth. But this special count is that the plaintiff sold the carcasses of dead cattle, for which the defendant agreed to pay the value of so many live beeves. The count is as much a special count, as if the special contract had been to pay for beeves what horses were worth. The implied contract, on which is based the common count of *quantum valebant* is to pay what the goods sold are reasonably worth. But by this special contract set out in this second count the defendant agrees to pay ten times the value of what he bought.

The plaintiff's counsel having first confounded this special count with the common count of *quantum valebant* then confounds that count with the common count of *indebitatus assumpsit* and attempts to apply a well known rule of the law laid down in *Brown & Rives* v. *Ralston & Pleasants*, 9 Leigh 532, 545, that where the terms of a special contract have all been performed and nothing remains to be done under the contract except for the defendant to pay a specified amount of money, this money may be recovered under the general *indebitatus assumpsit* count. If there were in this declaration any *indebitatus assumpsit* count, there can be no question, that on the proofs set out in bill of exceptions No. 2 the jury could have rendered a verdict for the plaintiff, and that under

this count such evidence would have been admissible, provided nothing remained to be done under the special contract, but for the defendant to pay the money he stipulated to pay. But in the absence of any such count it is to my mind clear, that the principles laid down in *James & Mitchel v. Adams*, 16 W. Va. 245, and 8 W. Va. 567, must control in this case, and the court erred in not excluding from the jury the evidence named in the first bill of exceptions so far as it set out that the defendant agreed to pay thirty dollars a head for the cattle, though other parts of this evidence might have been permitted to go to the jury as evidence under the first count. The court also erred in refusing to give instructions three, five and nine asked for by the defendant and set out in the second bill of exceptions.

In the evidence certified there is proof that the defendant and his brother, Columbus Ford, by special contract agreed to pay the plaintiff thirty dollars per head for the cattle that were killed. Upon this the instructions in bill of exceptions No. 2, which are marked No. 4 and No. 7, are based. It seems to me obvious, that these instructions lay down the law correctly, except that instruction No. 4 is somewhat carelessly drawn and should have been modified so as to read like the seventh instruction: "If the jury believe from the evidence, that the only promise of the defendant to pay for the cattle was a joint promise with Columbus Ford to pay the plaintiff thirty dollars per head for the cattle in the declaration mentioned as killed, then they must find for the defendant on the second count." So modified the court ought to have granted these two instructions and it erred in refusing; for it seems entirely clear, that in an action against one party on a promise or contract made by him to pay the plaintiff a certain sum recovery cannot be had, if the contract proven is not the one stated in the declaration but a joint contract made by the defendant and another.

The second instruction set out in the bill of exceptions No. 2 as asked by the defendant was, I think, properly rejected by the court, both because it is so worded, that it would tend to confuse rather than enlighten the jury, and for the further reason that, so far as I can comprehend its meaning, it seems to me to lay down the law incorrectly.

The refusal of the court to grant a new trial set out in bill of exceptions No. 3 was error in the circuit court. It is obvious from the testimony, that the jury assessed the plaintiff's damages at three hundred and fifty-seven dollars and sixty cents because of his promise to pay thirty dollars a head for the cattle which were killed. There was not a particle of evidence, that he ever promised to pay for these cattle what they were worth before they had been wounded and killed as stated in this second count; nor any evidence-as to the circumstances under which they were killed. The defendant's witnesses proved that the defendant never made any promise to pay for these cattle. The jury I presume credited the plaintiff's witnesses in this conflict of testimony; but this very evidence, on which it is obvious the jury based their verdict, ought, as we have seen, to have been all excluded from the consideration of the jury; and in its absence such a verdict, as was rendered, could never have been rendered. The verdict of the jury ought therefore for these and perhaps for other reasons not necessary to be stated to have been set aside and a new trial awarded.

The execution issued on the judgment rendered on this verdict by the circuit court has been sent up with the record; and from this execution it appears, that the plaintiff's costs in this suit in the circuit court were two hundred and seventy dollars. These costs, it is claimed, are much greater than they should be and have arisen from many witnesses having been summoned who were not examined. With this subject or with the correction of abuses in this respect, if any exist, this Court has nothing to do. The execution, which has been sent up, we can not even look at, as it constitutes no part of the record. For any such abuses, as are complained of, if they really exist, the circuit court alone or at least in the first place must be looked to for redress. It has certain powers in directing the taxation of costs, and if there is abuse in this matter, the defendant should ask that court for redress. When a new trial is awarded in this Court because of errors of the court in the trial below, it is usual to require, that the costs of the former trial should abide the result of the suit. I see no reason for departing from this rule in this case.

I am of opinion therefore, that the judgment of the circuit court in this case rendered November 22, 1881, must be set aside, reversed and annulled, and that the plaintiff in error must recover of the defendant in error his costs in this Court expended; that the verdict of the jury rendered in this case must be set aside, and a new trial awarded, the costs of the former trial to abide the result of the suit; and that this case be remanded to the circuit court of Taylor county to be further proceeded with according to the principles laid down in this opinion and further according to law. ·

REVERSED.   REMANDED.