# WHEELING.

## Dresser v. Transportation Company.

### July 27, 1875.

1. In an action at law, where the defendant appears and pleads the general issue, and the plaintiff introduces all his evidence in chief to the jury, and then rests his case, and the defendant moves the court to exclude the evidence from the jury upon the ground that there is a material variation between the declaration and the proof, if, from the whole evidence, it clearly appears to the court that the plaintiff's said evidence fails to support the issue on the part of the plaintiff, the court should exclude the evidence from the jury. In such case the court should regard the party moving to exclude the evidence in the light of a demurrant, and the party adducing the evidence in the light of a demurree, although there is in fact no demurrer. The court should consider, upon such motion, the plaintiff's evidence with all the favor, and give it all the force and draw therefrom all the inferences, it would be entitled to if there was a demurrer filed thereto by the party making the motion to exclude the evidence. And in such case, if, in the judgment of the court, according to the rules governing demurrers to evidence, the party offering the evidence would, on a demurrer thereto by the opposite party, be entitled to judgment thereon in his favor, then the court should not exclude the evidence from the jury.

2. In an action of assumpsit brought to recover the value of oil claimed by the plaintiff, (the declaration containing no good counts except the common counts,) which was in the possession of defendant at the time the action was brought, and which had not been sold or in any way tortiously disposed of by the defendant, and which came into the possession of the defendant as a common carrier, and not wrongfully, it was error in the court below to instruct the jury that if they believed from the evidence that the said oil was the property of the plaintiff, it was their duty to find a verdict for the plaintiff for the value of the oil,

1875.
June Term.

| 8  | 553 |
| 35 | 394 |
| 8  | 553 |
| 48 | 611 |
| 8  | 553 |
| 63 | 563 |

70

there not being evidence before the jury tending to prove a sale of the oil by the plaintiff to the defendant, but the evidence clearly proving that there had been no such sale, and that the defendant had only refused to deliver the oil to plaintiff on demand, under the peculiar circumstances shown by the evidence, as stated in the opinion of the Court in this cause. In such case, and under such a state of facts, the plaintiff was not entitled to recover the value of the oil upon the common counts for oil sold and delivered to the defendant by the plaintiff, or for money had and received by the defendant for the use of the plaintiff—there not being any sufficient and proper special count in the declaration covering the case.

3. In a deed of assignment or conveyance of leases from M. & W. to A. & S., the sixth clause is in these words, viz: "Also all our right, title and interest of, in and to the engines, boilers, tanks, tubing, derricks and all other fixtures and personal property situate upon and appertaining to the above leasehold interest and well, to us belonging," &c. This clause did not pass or convey to A. & S. the oil of M. & W. that was in the oil tanks at said well at the date of said deed, although it was on the leasehold estate, as it did not "appertain to the leasehold interest" which was conveyed.

Appeal from, and *supersedeas* to, a judgment of the circuit court of Wood county, rendered on the 2d day of July, 1874, in a suit therein pending between S. R. Dresser, plaintiff, and The West Virginia Transportation Company, defendant. The appeal was allowed on the petition of the defendant. The opinion of the Court contains a statement of the case.

The Hon. Charles S. Lewis, judge of the second judicial circuit, presided at the trial below.

*Walter S. Sands* for the appellant.

There was no appearance for the appellee.

HAYMOND, PRESIDENT:

This is an action of trespass on the case in assumpsit brought in the circuit court of the county of Wood.

The *first* count in the declaration alleges that on the 15th day of June, 1871, the defendant, in consideration

that a certain firm, trading under the name of Wright & McCandless, "had, at their special instance and request, delivered to said defendant, a large quantity of crude oil, to-wit: fifty barrels of oil in tanks at Prospect, Roth, and Thomas & Dresser wells, they, the said defendants, undertook and faithfully promised to re-deliver to said Wright & McCandless, or their order, said oil on demand; and whereas the said Wright & McCandless did demand and order said oil to be delivered to the plaintiff, to-wit: on the day and year aforesaid; yet the defendant, though often requested to-wit: On the 15th day of June, 1871, to re-deliver said oil to the plaintiff as requested by said Wright & McCandless, refused so to do."

The *second* count is somewhat like the first, except that it does not allege that Wright & McCandless ordered defendant to deliver the goods to plaintiff, and except also it alleges that the defendant failed to deliver the oil to either Wright & McCandless or plaintiff.

The *third* count alleges that defendant was on the 15th day of June, 1871, indebted to the plaintiff in the sum of $500, for the price and value of goods and chattels, and crude oil then and there sold, and delivered by the plaintiff to the defendant, at its request, and in $500 for money then and there paid by the plaintiff for the use of the defendant at its request; and in $500 for money received by the defendant for the use of the plaintiff, and in $500 for money found due from defendant to plaintiff, on an account stated between them.

There was no demurrer filed to the declaration, but the defendant appeared to the action and plead *non assumpsit*, on which issue was joined.

Afterwards on the 1st of July, 1874, a jury was duly selected and sworn to try the issue joined, and the jury found a verdict in favor of plaintiff for $166.52, and on the 2d day of July, 1874, the court rendered judgment upon the verdict of the jury for the amount thereof, and costs in favor of plaintiff against defendant.

1875.
June Term.

Dresser
v.
Transportation
Company.

During the trial of the cause the defendant took *three* several bills of exception to opinions and rulings of the court.

By the *first* bill of exceptions it appears that the plaintiff proved before the jury that on or about the 1st of June, 1871, the firm of Wright & McCandless, by written contract, not offered in evidence, by plaintiff, sold to George W. Alexander and John A. Steele, all their interest in certain oil wells, known, respectively, as the Thomas & Dresser wells, the Prospect well, and the Roth well, and that at the time of the sale the oil then on hand in tank, at said wells, was not sold; that at the time of the sale, or a day or two afterwards, measurement was had at the tanks, and the oil therein claimed by Wright & McCandless, was as follows: In the Prospect well, 21.77 barrels of 35° gravity; in the Thomas & Dresser well, 17 barrels, and in the Roth well, 10.24 barrels, of 31° gravity; that the measurement was made by the parties to said sale, none of the defendant's agents being present; that at the time of the sale the said Alexander and Steele and one B. H. Thomas, (who were known as the Alexander Petroleum Company,) took possession of the wells, and retained possession thereof until after the 1st day of July, 1871, pumping oil into the said tanks; that on the 15th day of June, 1871, the said firm of Wright & McCandless, delivered to the plaintiff a paper writing, directed to Messrs. Alexander, Thomas & Steele in these words and figures, viz:

"West V. Transp. Co.:

You may settle with Mr. S. R. Dresser for our share of oil in tank at Prospect, Roth & Dresser wells to June 1, 1871.  June 15, 1871.

"WRIGHT & McCANDLESS;"

That a day or two thereafter, the plaintiff presented the said paper to Mr. Alexander, one of the parties to whom it was addressed who refused to accept it; that after some negotiations, the plaintiff and said Alexander and McCandless of the firm of Wright & McCandless,

1875.
June Term.

Dresser
v.
Transportation
Company.

agreed to change the said paper writing by directing the same to the defendant and thereupon the words "Messrs. Alexander, Thomas & Steele" therein, were erased by running a pen through the same and the words "West V. Transp. Co." inserted in lieu thereof; that thereupon, the plaintiff accompanied by Alexander and McCandless, went to the office of defendant and gave the said paper writing to one John M. Brown, the defendant's book keeper in the absence of its managing agent, M. C. C. Church; that Alexander told Brown to make up the division of the oil when shipped and that the plaintiff was entitled to the share of Wright & McCandless, and the said paper writing was left with said Brown for Church to see on his return; that it was also proven that at the time last mentioned the defendant had not possession of any portion of the oil in dispute, but that it constituted parts of larger quantities in the tanks at the several wells mentioned in said paper writing, and was in possession of the Alexander Petroleum Company; that in the latter part of June, 1871, the Alexander Petroleum Company shipped through the pipe lines of the defendant from the wells aforesaid, the oil therein contained, to the tanks of the defendant at Petroleum, among which were the oils so claimed as aforesaid; that after such shipment the plaintiff on the first day of July, 1871, applied to M. C. C. Church the managing agent of defendant and demanded from him the oil claimed by him to be due under and by virtue of the said paper writing; that said Church replied that the defendant had the oil, but that the Alexander Petroleum Company had given the defendant notice, both verbal and written, that they claimed all the oil shipped from said wells, and that he (Church) as the agent of the defendant could not recognize the directions of any person, except those who shipped the oil; that Church knew of plaintiff's claim before receiving the said notice, and he had consulted defendant's counsel on the subject, and the question who was entitled to the oil in dispute must be left to the court

to decide ; that the defendant through said Church, its authorized agent, refused to accept the said paper writing and to deliver said oil in dispute to the plaintiff. It was also proven that the defendant was at the time aforesaid a common carrier, engaged in the transportation of oil for hire ; that it had been the custom of defendant, to receive oil in bulk to transport from well owners, and by a general and mutual assent between the shippers of the oil and claimants of the different interests to apportion to each claimant his *pro rata* quantity and to issue to each of them a certificate for his respective share, and that such divisions were made by the direction of the shippers. It was also proven by Marion Wright, (a witness for plaintiff,) a member of the said firm of Wright & McCandless, that his firm had given the said paper writing to the plaintiff, in payment of a part indebtedness, and that the firm had not sold the oil therein referred to, to any person other than the plaintiff. It was also proven that the value of the oil of 35° gravity was $4.50 per barrel, and that sometime after the institution of this suit the plaintiff received from the Alexander Petroleum Company the seventeen barrels of oil in dispute, claimed by him from the Thomas & Dresser wells; that B. H. Thomas, who was a part owner of the wells from which the oil in controversy was pumped, had received his share of the oil from the defendant according to the apportionment made by the defendant's book keeper ; that all the facts above stated were proven upon the cross-examination of plaintiff's witnesses after plaintiff had given evidence tending to prove, on direct examination, that the oil in controversy belonged to Wright & McCandless; that the order aforesaid was given by Wright & McCandless to the plaintiff; that the Alexander Petroleum Company recognized said order and acknowledged the oil to belong to the plaintiff ; that the oil in controversy was in the possession of the defendant at the time of the institution of this suit, and defendant had refused to deliver the same to the plaintiff;

and the value of said oil as before set forth. It further appears that this was substantially all the evidence offered by the plaintiff to maintain the issue on his part.

And the plaintiff having rested his case, the defendant before offering any evidence upon its part moved the court to exclude from the jury all the evidence so offered by the plaintiff as aforesaid upon the ground of a material variance between the same and the declaration, but the court overruled the motion and the defendant excepted to the opinion of the court.

The first and second counts in the declaration are each clearly defective in failing to show any legal cause of action in the plaintiff. According to the statements and averments in each of these counts they show that the plaintiff has no legal cause of action against the defendant but that if there is any legal course of action, by reason of the matters therein stated, and alleged, it is in Wright & McCandless; these counts of the declaration wholly fail to show any right of property in the plaintiff to the oil therein mentioned, or any part thereof, or any privity of contract between the plaintiff and defendant in law or in fact. The mere allegation in the first count that Wright & McCandless had ordered the defendant to deliver the oil to plaintiff gives no right of action upon the contract, as stated, to plaintiff, because the Company refused to deliver the oil to the plaintiff upon such order, though the defendant may have promised Wright & McCandless to deliver the oil to them. It no where appears in either of said counts that defendant promised Wright & McCandless to deliver the oil to plaintiff for his sole benefit. See 12th Leigh, 204: 14 Grattan 44. The evidence does not tend to support either of the common counts. It does not show or tend to show a sale of the oil to the defendant by the plaintiff but the contrary. I think it tends to show that there was a sale of the oil by Wright & McCandless to plaintiff, but not that the plaintiff sold the oil to defendant.

The evidence, it seems to me, simply tends to show that the oil was the oil of the plaintiff and that it was delivered to the defendant as a common carrier, by the Alexander Petroleum Company, to be transported from the tanks at their wells to the tank of defendant at Petroleum, and that after it was so transported by the defendant the plaintiff demanded the oil and the defendant refused to deliver it to him, because it was claimed by the Alexander Petroleum Company in whose possession it was at the said wells and who delivered it to defendant to transport. It does not appear that defendant sold or disposed of the oil, or any part of it. Now, does the simple refusal to deliver the oil on the plaintiff's demand under the circumstances appearing in this case support either of the common counts for goods and oil sold and delivered to the defendant by the plaintiff or for money received by the defendant for the use of the plaintiff? I think not. "Where goods of a trader after his act of bankruptcy are taken in execution, or otherwise tortiously disposed of, without the concurrence of the assignees, they may waive the tort, and declare in assumpsit for money had and received, if the goods have been sold, but they must adopt the latter form of action, if they have affirmed and recognized the wrongful sale and waived the original tort. Assumpsit also lies to recover money paid or goods delivered by a bankrupt by way of fraudulent preference, and there are many other instances in which a party may waive the tort, and sue for money had and received." 1 Chitty on Pl. 6th Am. ed. 113. In the case at bar the oil did not come into the possession of the defendant by any wrongful or tortious act. In Massachusetts it is *held* that in case of trees wrongfully cut and carried away from the plaintiff's land by the defendant, but not sold by him, there cannot be maintained an action for goods sold and delivered; but if the trees have been sold the plaintiff may recover the proceeds of sale as money had and received; that if the trees have not been sold the proper action is

1875.
June Term.

Dresser
v.
Transportation
Company.

for trespass for injury to the land or trover for the trees. *Whitwell v. Vincent* 4 Pick. 452; *Jones v. Hoar* 5 Pick. 290 *McKnight v. Dunlop*, 4 Barbour (N.Y.) 42; 10 Pick, (Mass) 165; 3d vol. Rob. (New) Prac., ch. 73, sections 7 and 8, and cases there cited. The evidence does not tend to prove that the oil was tortiously disposed of by defendant, or that it received any money or other consideration therefor, but the evidence clearly proves that the defendant still had the oil in its possession at the time this suit was brought. Plaintiff not having received the property is certainly entitled to recover it or its value, if it is his, in a proper action—either in this action, in a proper form of count, or in another hereafter brought. If he fails in this action because assumpsit is not the proper action, then he is entitled afterwards to recover in any proper action. It may be that since the commencement of this action the defendant has so disposed of or converted the property as to authorize a recovery of the value on the common counts in assumpsit. Perhaps a count in assumpsit or trover or some form of case might be framed to meet this case as presented which the evidence would support, but this question is not now presented and not now determined, as it does not fairly arise upon the record. Under the circumstances, the court erred in refusing to exclude the plaintiff's said evidence from the jury. *James & Mitchell v. T. H. Adams, supra.*

By the *second* bill of exceptions, it appears that after evidence had been introduced to the jury tending to show that on or about the 1st day of June, 1871, the firm of Wright & McCandless sold to George W. Alexander and John A. Steele certain oil wells known as the Prospect, Roth, and Thomas & Dresser wells, and that the sale did not include the oil in controversy in this suit, which was pumped from the wells into tanks on the leased premises, and which was afterwards sold by said Wright & McCandless to the

*Margin note: 1875. June Term. Dresser v. Transportation Company.*

plaintiff, as shown by paper writing No. 1, and that said Alexander had acknowledged that said oil belonged to Wright & McCandless prior to their sale to plaintiff, the defendant offered in evidence the written agreement or deed between said firm of Wright & McCandless and George W. Alexander and John A. Steele for the sale of the oil wells aforesaid, and leases upon which the same were situate. This deed is for the consideration of $6,000, and recites that Marion Wright and T. M. McCandless, for said consideration, have granted, bargained and set over, and by these presents do bargain, sell, assign and set over unto George W. Alexander and John A. Steele the following oil leasehold interests. The deed then proceeds to describe the several leasehold interests conveyed, and then it, from one to five inclusive, enumerates them, and then proceeds: *"Sixth,* also our right, title and interest of and into the engines, boilers, tanks, tubing, derricks and all other fixtures and personal property situate upon and appertaining to the above leasehold interest and well to us belonging, the said interest being an undivided two-thirds interest in said property or leases Nos. 32, 34 and 36 on Oil Run Petroleum Company tract, and undivided half in said lease 33 Oil Run Petroleum Company tract, and lot No. 1 on Grant Oil Company tract, to have and to hold the leasehold *interest* and well aforesaid unto the said George W. Alexander and John A. Steele for and during the unexpired term of said original lease, subject to all the rents," &c. This deed is dated May 30, 1871, and is signed and sealed by all the parties thereto, and it was acknowledged on the same day of its date, in Wood county, before a notary. It also appears that the said deed was allowed to be read in evidence to the jury, the court remarking that evidence might be offered to explain the same by the defendant; but evidence was offered by the defendant tending to prove that at the time of the date of the deed the oil in controversy was in the tanks at said wells; that afterwards the plaintiff called a witness

1875.
June Term.

Dresser
v.
Transportation
Company.

who testified that said Alexander had said that he did admit the oil in controversy was the oil of Wright & McCandless, and the plaintiff as their vendee should take possession of the oil in controversy, but that he did not do so because of the failure of the title of Wright & McCandless to a half interest in an engine included in the sale from them to Alexander & Steele; that he, Alexander, had discovered that one B. G. Wilson owned one-half of said engine, and therefore he would not let Wright and McCandless have the oil; whereupon the plaintiff, by counsel, moved the court to exclude from the evidence before the jury the deed aforesaid, and the court sustained the motion and excluded the deed and the defendant excepted. I don't think this ruling of the court was erroneous. It seems to me that it was not the purpose of said deed to convey the oil that was in tanks to Alexander & Steele. It is true the oil was situate upon the leasehold estate, but it did not appertain thereto, and such seems to have been the construction placed upon the deed by the parties then and afterwards.

By the *third* bill of exceptions it appears that after plaintiff had been permitted to give to the jury the evidence set forth in said bill of exceptions No. 1, which is made a part of this bill of exceptions, the defendant, to maintain and prove the issue upon its part, gave evidence to prove that upon the 26th and 29th of June, 1871, the defendant received from the Alexander Petroleum Company two shipments of oil, as shown by two memoranda with endorsement thereon, which are set out in full in the bill of exceptions. Upon one of the memoranda, among others, is the endorsement, "Wright & McCandless, 22.33 Gr., 21.77 N. 9.80 c.; B. H. Thomas 11.17 Gr. 10.89. N. 4.91 c.; and upon the other, among others, W. & McC. 10.50; Gr. 10.24 N. 4.61 c;" that defendant also gave evidence by witness Van H. Bukey tending to prove that the said memoranda were signed by said witness, the shipping agent of the defendant, and approved by James Smoot, as to the correctness of

the measurement of the oil, Smoot being the man in charge of the wells aforesaid then belonging to and in possession of the Alexander Petroleum Company; that said memoranda were sent by said Bukey to the principal office of the defendant in Parkersburg, and received by John M. Brown, the book keeper of the defendant, who thereupon, at the request of said Alexander, made the calculation as to the division of said oil among the various claimants thereof as is shown by the endorsements thereon, as is the custom among parties shipping oil; that said Brown had no authority from the defendant to make divisions of oil binding upon said Company, but that the same were subject to the ratification of M. C. C. Church, the business manager of the defendant; that at the said time Church was absent from home and upon his return, about the 1st of July, 1871, he received from the Alexander Petroleum Company the following notice, viz:

"PARKERSBURG, W. VA., July 1, 1871.
To the West Va. Transportation Co.:

You will please take notice that we claim all the oil shipped by you through your pipe since the 1st day of June, 1871, from the Prospect wells, the Roth well and the Thomas and Dresser well, Ritchie county, lately owned by Wright & McCandless, less the royalty. We make this demand as the owners of the well and the shippers of the oil, and demand that the storage receipts therefor be issued to us.

[signed]     Alexander Petroleum Co., by G. W. A."

That on receiving said notice he refused to accept the said order or paper writing mentioned in bill of exceptions No. 1, and refused to deliver the oil in controversy to the plaintiff. And that at no time did defendant accept said order, but refused, upon the demand of said Dresser to deliver to him the oil in controversy, in consequence of the receipt of the notice aforesaid, although the said oil was, at the time last mentioned, in the possession of the defendant, as per the two shipments

aforesaid. And that said Church, who was a witness on behalf of the defendant, gave evidence tending to prove that the defendant had no claim to the oil in controversy; that the defendant wished the court to decide to whom it belonged, and retained it only because of the notice aforesaid from their shippers. As rebutting evidence the plaintiff called B. H. Thomas, a member of the firm of the Alexander Petroleum Company, who gave evidence tending to prove that he had no knowledge of the said notice last mentioned; that he never assented to the same, and that he never saw it until the trial; that Alexander had told him that he had given such a notice, but he (witness) did not know it was given in the name of the Alexander Petroleum Company; that prior to the sale of Wright & McCandless to Alexander & Steele he was the owner of an interest in said wells, and he had received from the defendant his share of the oil upon the two shipments, as indicated by the endorsement upon the memoranda aforesaid; and also that the Alexander Petroleum Company had no claim to the oil in question other than under the deed referred to in bill of exceptions No. 2. The jury, after having heard all the evidence, retired from the bar of the court to consider of their verdict, and after a short time returned into court and inquired of the court if they could render a special verdict to the effect that the oil in controversy belonged to the plaintiff, to which the court responded and so instructed the jury that if they believed, from the evidence, that the oil in controversy belonged to the plaintiff, it was their duty to find a verdict for the plaintiff for the value of the oil in controversy; to which ruling and instruction of the court the defendant, by counsel, excepted. On this bill of exceptions the question arises, did the court err in its said instruction so given to the jury. It seems to me that the court did err in this respect. It did not necessarily follow that if the jury believed the oil was the property of the plaintiff that they must find for the plaintiff the

value thereof in this action upon the issue joined. The oil might be the property of the plaintiff, and still the plaintiff not entitled, upon the evidence, to recover the value thereof from the defendant. The jury had more to inquire about than the simple right of property in the oil in controversy before they were justifiable in finding for the plaintiff the value thereof. If the jury believed from the evidence that the oil was the property of the plaintiff, then it was their duty and province to further ascertain if such other facts were proven by the evidence as entitled the plaintiff to recover, upon the issue joined, from the defendant the value of the oil. And the jury, in considering this question, were the judges of the weight of the evidence and of the facts proven. The court, in giving this instruction, derogated from the province of the jury, unintentionally of course, and this is error sufficient to require the reversal of the judgment. Much that I have said in considering some of the questions presented by bill of exceptions No. 1, especially as to the evidence of the plaintiff being admissible under the pleadings, applies to the instruction of the court given to the jury with equal, if not greater, force, and I will not again repeat it.

For these reasons the judgment of the circuit court of Wood county, rendered in this cause on the 2d day of July, 1874, must be reversed, and the plaintiff in error recover against the defendant in error its costs herein expended in this Court. And this Court proceeding to render such judgment as the court below ought to have rendered in the cause, it is considered that the verdict of the jury rendered in the cause be set aside and a new trial granted to the parties, the costs of the former trial to abide the event of the suit, and that the cause be remanded to the circuit court of said county of Wood, with leave to the plaintiff to file an amended declaration

therein if he asks so to do, and further to be proceeded in according to law.

Hoffman and Moore, Judges, concurred.

JUDGMENT REVERSED, VERDICT SET ASIDE AND CAUSE REMANDED, WITH LEAVE TO PLAINTIFF TO AMEND HIS DECLARATION.