# WHEELING.

## FRANKLIN *v.* GEHO.

Submitted June 2, 1887.—Decided June 25, 1887.

1. EXCLUSION OF EVIDENCE.

A motion to exclude all the plaintiff's evidence from the jury is equivalent to a demurrer to the plaintiff's evidence; and the court in determining the facts proven by the evidence will draw inferences more favorable to the plaintiff, when there is a grave doubt, which of two inferences should be deduced; and these inferences will be drawn in favor of the plaintiff to the same extent, as if on like evidence the defendant moved for a new trial.

2. FORCIBLE ENTRY AND DETAINER.

A forcible entry under our statute giving civil redress by summary proceedings is precisely what would constitute a forcible entry, for which at common law a party might be punished criminally. It therefore lies, when a party enters on land in the possession of another, and either by his behavior or speech gives those who are in possession just cause to fear he will do them some bodily harm, if they do not give way to him. Such just cause to fear, which would make the intruder liable to criminal punishment or to be proceeded against civilly arises from his taking with him such an unusual number of attendants or arming himself in such manner as plainly to show a design to back his pretensions by force; or it may arise from his threatening to kill, maim, or beat those, who continue in possession, or by use of any expressions plainly implying a purpose to use force against those who may make resistance.

3. FORCIBLE ENTRY AND DETAINER.

A case where a court on motion to exclude, or a jury could properly infer that the act of a party amounted to an unlawful detention of real estate.

4. FORCIBLE ENTRY AND DETAINER.

In an action of unlawful or forcible entry and detainer a ver-

dict finding, that the defendant unlawfully withholds from the plaintiff the land in the summons described, is sufficient; and a judgment may be entered upon it.

5. Forcible Entry and Detainer.

Where the only ground, on which the defendant could ask or expect a verdict in his favor is, that he committed an act of trespass only and never detained the possession of the land from the plaintiff, who, he claimed, remained in possession of the land, this Court could not reverse the judgment of the court below in favor of the plaintiff. If the defendant has any ground of complaint, it is only, that costs were adjudged against him; and the appellate court never reverses a case for error in the judgment as to costs only, nor will it entertain the writ of error, if this is all the subject of controversy in the appellate court.

6. Recalling Witnesses.

The courts are liberal in allowing parties plaintiff or defendant, after their evidence is closed, to recall witnesses and again examine them to supply omitted facts. If such action of the court is reversible at all, it would only be when the discretion was obviously abused to the prejudice of the opposite party, and in a manner, which, if allowed, would tend to pervert justice.

Statement of the case by Green, Judge:

This was an action for a forcible and unlawful entry and detainer brought by Donald Franklin against Thomas M. Geho in the Circuit Court of Marshall county to recover the possession of a parcel of land thus described in the summons: "90 poles situated in Liberty district, Marshall county, West Virginia, bounded as follows: Beginning at the road, where the posts lately set for fence commences; thence with the same N. 28° E. 4¾ poles to a stake; thence S. 75° E. 33 poles with old line and fence to a stake; thence N. 83½° W. 28½ poles to a stake; thence N. 74° W. to the beginning." The summons was issued September 24, 1885, and was duly served. A motion was made to quash the summons on October 12, 1885, but it seems to have been forgotten or withdrawn, as it was never acted on by the court. On November 3, 1885, the defendant pleaded not guilty; and issue was joined, which was tried by a jury on November 4, 1885; and the jury found the following verdict: "We, the jury, find, that the defendant, Thomas M. Geho, unlawfully withholds from the plaintiff, Donald Franklin, the premises in the

summons described namely : Beginning at the road, where the posts lately set for fence commences; thence with same N 28° E. 4¾ poles to a stake ; thence S. 75° E. 33 poles with the old line and fence to a stake; thence N. 83½° W. 28½ poles to a stake ; thence N. 74° W. to the beginning, containing ninety poles." The defendant moved the court to set aside this verdict and grant him a new trial, because the verdict was contrary to the law and the evidence, and because the rulings of the court during the trial were erroneous. On November 14, 1885, the court overruled this motion and entered up a judgment, that "the plaintiff recover of the defendant the possession of the premises described in the verdict of the jury aforesaid and his costs in this behalf expended."

Bills of exceptions were taken during the trial of the case, by which it appears, that the plaintiff alone offered any evidence in the case; and this evidence proved, that the plaintiff owned a farm adjoining the defendant; that an old fence separated the two farms, which fence was within one hundred yards of the defendant's residence; that prior to July 20, 1885, there never had been any controversy as to the division-line between these two farms, the old fence being on the line or supposed to be by the owners of each of the farms; that for about twenty years the plaintiff had owned his farm and lived upon it, and the ninety poles named in the summons was a part of his farm adjoining the defendant's farm, and was a meadow, which he had occupied for twenty years, occasionally cultivating it in corn and wheat, but generally keeping it in grass, which he cut; that as usual he cut this meadow just prior to July 20, 1885, and removed a part of the grass cut, leaving a part of it to get drier than it was before removal ; that during his absence from home on the morning of July 20, 1885, his neighbor, the defendant, having for some reason concluded, that the old fence was not on the true boundary line between the farms, entered on the plaintiff's farm and commenced putting up a fence along what he claimed to be the true division line between the two farms, which new fence cut off the ninety poles named in the summons from the plaintiff's farm and would have added that much to the defendant's farm ; that the plaintiff, when

he came home, forbade the defendant to enter on his land and build this fence, but the defendant said, that he would build the fence, as the land, he was enclosing by it, belonged to him as a part of his farm; that the ninety poles so claimed by the defendant had on it an old frame-building, which was unoccupied, but which had been occupied formerly by the plaintiff's father with his consent, and also had on it an orchard; that the plaintiff threatened to have him indicted, but he continued to put up the fence and hauled off the hay, which the plaintiff had cut as aforesaid, claiming it as his; that the plaintiff tried to have him indicted, but the grand jury refused to indict him for this act; that the plaintiff and his sons then pulled down a part of the rail-fence, which the defendant had built as aforesaid; that the defendant put it up again, and the plaintiff pulled it down again; that on August 28, 1885, the defendant went on the land to re-build this fence the third time, and the plaintiff forbade him to go on with the building of it; that they quarrelled about it, but the defendant finished the fence, as it was originally built by him on July 20, 1885, and swore he would whip the plaintiff, if he pulled it down again; that the plaintiff said he would let the court decide the dispute and employed counsel promptly to bring suit, but it was not brought till a month afterwards; that in the mean time the land in dispute being meadowland, neither party exercised any acts of ownership over it, except that the defendant pulled down gradually some four or five panels of the old fence which divided the two farms, and burned them for fuel, thus putting the land in dispute into the same enclosure with a small lot on his farm, which ran up to his house, but as this lot had been in meadow also, there was no stock put upon it during the month, which elapsed, before this suit was brought after it was enclosed in this manner with the land in dispute; that during this time the plaintiff had no possession of the land in dispute, unless such possession can be inferred from his having the key of the old unoccupied frame-house on it, or from his sons gathering, without his direction, four or five bushels of apples from the orchard on the land in dispute and putting them in the old frame-house on the disputed land.

When the plaintiff had finished his evidence, which establishes the above state of facts, the defendant moved the court to exclude the plaintiff's evidence, on the ground that it was insufficient to maintain his suit. It being near the hour of adjournment, the court held the question over one night for consideration. When the court opened the next morning, the plaintiff moved, that he be allowed to re-call the witnesses and offer other testimony-in-chief, because his counsel said, they had not been able the day before to bring out the facts within the knowledge of the witnesses, who had been examined. This motion was granted, the defendant objecting. The plaintiff and one of his sons were then re-examined-in-chief and cross-examined; but their evidence did not materially change the case, as it was shown by the evidence given on the day before. The defendant then renewed his motion to exclude from the jury all the plaintiff's evidence, which motion the court overruled, and the defendant excepted.

The following instructions were given to the jury by the court on the motion of the plaintiff and excepted to by the defendant:

" If the jury believe from the evidence, that the plaintiff was in the possession of the land in question, and the defendant adhered upon the same and forcibly turned the plaintiff out of the possession and kept him turned out of the possession up to the time of the bringing of this suit, then you will find for the plaintiff, unless you find, that the defendant has been in the possession of the said land for three years before the date of the summons therein."

" If the jury believe from the evidence, that the defendant, Geho, made a forcible entry upon the lands described in the writ, and that he detained the possession of the same at the date of the issuing of this writ, then the verdict should be for the plaintiff, unless they should find further, that the defendant, Geho, had been in possession three years before the bringing of this suit."

Another instruction was also given at the instance of the plaintiff and two others at the instance of the defendants; but as neither was excepted to, it is deemed unnecessary to state them.

The jury found the verdict for the plaintiff before stated. The defendant moved for a new trial, and the court overruled the motion and entered up the judgment for the plaintiff before stated. To this judgment the defendant has obtained a writ of error and *supersedeas.*

*Ewing, Melvin* and *Riley* for plaintiff in error.

*J. L. Parkinson* and *J. B. McLure* for defendant in error.

GREEN, JUDGE :

The counsel for the plaintiff in error in their petition for a writ of error do not assign as an error the failure of the court to act on the motion to quash the summons in the case made by the defendant below on October 12, 1885, and in stating the case in their brief they say the motion seems to have been forgotten or abandoned, yet they argue in their brief, that the motion ought to have prevailed, because the land was not described with convenient certainty in the summons; and as an authority to sustain their view they refer to *Moore* v. *Douglass,* 14 W. Va. 708, 726. In that case the court held, that after the defendant had pleaded not guilty, and an order of a survey of the land had been made and executed, it was too late for the defendant to make a motion to quash the summons, because the land was not described in it with convenient certainty. Judge Haymond says on page 728, that it was not necessary to make in the summons a minute description of the premises demanded by metes and bounds ; all that is required is, that it should be made with reasonable certainty. In that case Judge Haymond states on page 727, that the description of the land was so loose as to fail to locate it with reasonable certainty ; and it is obvious, that it was such a description that it would be impossible to determine the location of the land. But even in that case Judge Haymond says, that a slight addition to the description would have made it sufficient.

In the case before us the description in the summons, given in full in the statement of the case, is obviously much more minute and definite than is necessary. It seem to me, that, if this description had not been made with convenient certainty, still the defendant could not in this Court under

the circumstances complain, that his motion to quash the summons was not sustained, as the defendant below by his action in pleading not guilty and trying the case before the jury without insisting, that his motion to quash the summons should be acted upon before the trial, must be regarded as waiving any defect, had there been any, for insufficiency of description of the land, as this might be supplied by the verdict of the jury. But this point need not be decided, as the description of the land in the summons as well as in the verdict was abundantly definite and certain.

The argument of the counsel for the plaintiff in error, that the description of the land of which the plaintiff's witnesses all spoke, did not identify the premises in dispute, of which they spoke as the same land, as that described in the summons, seems to be, if possible, still more groundless. The witness, Donald Franklin, the plaintiff, describes the land, of which he spoke, as about 90 poles described in the paper shown him, which was doubtless the summons; and he says that this land was the land in dispute, which he was then seeking to recover. He could not have identified the land more clearly, if he had stated its metes and bounds, as the summons did. The motion to exclude all the plaintiff's evidence from the jury was properly overruled by the court below, as will be presently shown.

The two instructions copied into the statement of this case state accurately the law of the case. It is admitted by the counsel of the plaintiff in error, that the first instruction is correct; and they insist, that it should not have been given only because there was no evidence tending to prove, that the defendant below " entered upon the land in dispute and forcibly turned the plaintiff below out of possession and kept him out of possession up to the time of bringing this suit." The other instruction is also found fault with by the counsel for the plaintiff in error, only because it contains the following language : " detained possession of the same at the date of the issuing of the writ in this case," whereas it should have been " detained *from the plaintiff* possession," &c. This is a quibble. The instruction clearly meant exactly what the plaintiff in error by his counsel admits to be law.

Could a jury upon the evidence in this case have found a

verdict in favor of the plaintiff, or is the evidence to sustain the plaintiff's case of such a character, that upon a demurrer to evidence by the defendant the court should have rendered a judgment, or, if on this evidence the jury had found a verdict for the plaintiff, the court on a motion ought to have awarded a new trial, on the ground that such verdict was unsustained by the evidence. If such was the character of the plaintiff's evidence, it ought to have been excluded from the jury; otherwise the court did not err in refusing on the motion of the defendant below to exclude all the plaintiff's evidence from the jury. *Dresser* v. *Transportation Co.*, 8 W. Va. 553; *Schwarzbach* v. *Pro. Union*, 25 W. Va. 622.

As a demurrer to evidence or a motion to exclude the plaintiff's evidence withdraws from the jury, the proper triers of facts, the consideration of the evidence by which they are to be ascertained, the party, whose evidence is thus withdrawn from its proper forum, is entitled to have it most benignly interpreted by the substituted court. *Schwarzbach* v. *Pro. Union*, 25 W. Va. 642; *Miller* v. *Insurance Co.*, 8 W. Va. 515. In such cases the law is as stated by Judge Stannard in *Ware* v. *Stevenson*, 10 Leigh 164: "In determining the facts inferable from the evidence inferences most favorable to the demurree will be made in cases, in which there is a grave doubt, which of two or more inferences shall be deduced." And again he says: "When the question is whether or not a fact ought to be taken as established by the evidence either directly or inferentially in favor of the demurree, I do not know a juster test than would be furnished by the inquiry: Would the Circuit Court set aside the verdict, had the jury on the evidence found the fact? If the verdict so finding the fact would not be set aside, it ought to be considered as established by the evidence demurred to.

Applying this rule, did the defendant below make a forcible entry upon the plaintiff's land named in the summons, and did he detain the possession of it from the plaintiff at the time the summons was issued, September 24, 1885? If so, the evidence below was properly not excluded from the jury. It is admitted by the counsel for the plaintiff in error, that the court below did not err, unless it was in not excluding the plaintiff's evidence from the jury and in not

setting aside the verdict and awarding a new trial, if the verdict was in proper form, or in granting the instructions it did. These facts were proven by the evidence thus benignly interpreted in favor of the plaintiff below; and the judgment of the court, if in proper form, must be affirmed by this Court.

A forcible entry, for which under our statute as under the statute of other States the party dispossessed is given civil redress by this summary proceeding, is precisely the same as the forcible entry, for which at common law an indictment would lie. *State* v. *Pollard*, 4 Ired Law 305; *Butts* v. *Voorhees*, 13 N. J. 13; *Commonwealth* v. *Dudley*, 10 Mass. 409. What constitutes such forcible entry is laid down in these and other cases; and they all substantially agree. The Court in *State* v. *Pollard* say: "Where a party entering on land of another by his behavior or speech gives those, who are in possession, just cause to fear, that he will do them bodily harm, if they do not give way to him, his entry is esteemed forcible, whether he caused the terror by taking with him such unusual number of attendants or by arming himself in such manner, as plainly to indicate a design to back his pretentions by force, or by actually threatening to kill, maim or beat those, who continue in possession, or by making use of expressions plainly implying a purpose of using force against those, who make resistance. As sustaining these views see also *Pennsylvania* v. *Robinson*, Add. 14, and *Pennsylvania* v. *Waddell*, Id. 41.

In the case before us it was proven, that the plaintiff below had been in the actual use and open possession of the land in dispute for more than twenty years, having it inclosed in his farm, which adjoined the farm of the defendant below. While the plaintiff below was absent from his farm for a single day, the defendant below entered upon it and commenced fencing it, claiming it then for the first time as a part of his farm. The plaintiff below returning home and finding the defendant below so engaged, protested against his fencing off and taking possession of this land; but the defendant paid no attention to his protests but completed his enclosure of the land in dispute. This was on July 20, 1885; and the next day the defendant hauled off from the land the

hay, which grew upon it, which the plaintiff had cut, while the land was in his possession, but had not hauled off. The plaintiff subsequently pulled down this fence; and the defendant re-built it; and the plaintiff again pulled it down; and on the 20th of July, 1885, the defendant commenced rebuilding the fence as before. While his hands were so doing the plaintiff in his evidence says, the defendant, whose house was only about a hundred yards distant, came up and said to the plaintiff, that he wanted this fence to be let alone, and he intended, it should remain, where he put it, and swore, he would whip him and his whole family (meaning his sons), if the plaintiff again changed the fence. The plaintiff says, that not wishing to get into a fight, which he would have had to do, if he again pulled down the fence, he told the deft., he would not do so but would let the law decide their dispute about the land; and accordingly he at once spoke to a lawyer to bring this suit, but it was not brought for nearly four weeks thereafter. The plaintiff's two sons testify, that they were present, when this quarrel commenced, and say, they did not hear, the defendant below say, he would whip the plaintiff; but he did swear, that he would put up the fence, and that it would not be safe for the plaintiff and his two sons to tear it down again. They say, they left, while the quarrel between their father and the defendant was sttll going on. Another testified, that the defendant below told him, that on this occasion the plaintiff had ordered him off the land, and that thereupon he had ordered the plaintiff off and told him, he would have to go, and if he did not, he would whip him, and that one of his sons said, that there was more than one of us. This evidence is certainly to some extent unsatisfactory and contradictory ; but giving it a most benign interpretation, as the the court must have done on this motion to exclude the evidence of the plaintiff, and more especially as he never did again pull down this fence, as he had done twice before in a month's time, but instead of doing so brought this suit, we must conclude, that the plaintiff was driven from the possession of this land by the threats of the defendant, that he would beat him ; and this constituted the entry on this land by the defendant a forcible entry.

But it is said by the counsel for the plaintiff in error, the defendant below,.that the subsequent conduct of both parties showed, that this conduct of the defendant was only a trespass and not a disposessing of the plaintiff, because his own evidence showed, that after these occasions the plaintiff was in the peaceable possession of this land, and the defendant never afterwards was upon it or used it in any manner.

The facts are that there was an old frame-house on the land which had been and continued to be unoccupied. The plaintiff below had the key of this house and continued in possession of the key, the defendant not demanding it; and nothing having been said on this subject afterwards by either party, the sons of the plaintiff without any direction from him gathered some apples from some trees growing on this land, some four or five bushels, and put them in this vacant house, where they remained; and the plaintiff below after these occasions had more than once walked across this piece of land. On the other hand the defendant below after these occurrences pulled down and burned up several panels of the old fence, which separated the farms of the two parties and thereby threw this disputed ground into the same inclosure with the small field on the farm of the defendant below close to his house. The hay-harvest having passed, the defendant had no use for this small field between the time of these occurrences and the institution of this suit, as he put no stock or cattle of any sort on it keeping it for a meadow; but by pulling down this old fence he had thrown it into the same enclosure with the disputed land, which was also a meadow unused after the hay was cut off in the manner before stated. When the case was submitted to the jury on the plaintiff's evidence, the court at the instance of the defendant below gave the following instructions to the jury and the plaintiff below did not except to them. They state the law correctly.

### DEFENDANT'S INSTRUCTION NO. 1.

"If the jury find from the evidence that defendant, Geho, went upon the land and cut and hauled away grass, and attempted to and did at three several times partly erect a fence, and that after warning from plaintiff to depart he did not return, and abandoned the possession of the premsies in

question, and did not detain the possession thereof from the plaintiff on the 24th day of September, 1885, then you must find for the defendant."

DEFENDANT'S INSTRUCTION NO. 2.

" The jury are instructed that no claim of ownership of the property or of intention of the defendant to hold the possession thereof made on or about the 28th day of August next before the bringing of this suit are sufficient to enable the plaintiff to recover, if the jury find from the evidence that the defendant did not in fact withhold the possession of the premises at the date of the commencement of this action, to-wit, on the 24th day of September, 1885; but the jury may take into consideration a claim of ownership made by the defendant and his declarations as to his possession of the same in connection with other evidence in determining whether in fact he was in possession of the premises at the commencement of this action."

In support of the position, that, what the defendant below did, could not be regarded as an entry upon the land either forcible or unlawful or a detention of the possession of it from the plaintiff below but simply as a trespass, the counsel for the plaintiff in error relies upon *Hays* v. *Altizer*, 24 W. Va. 505. That case is very different from the one before us. There the defendant below had been continuously at least *four* years, before the suit was brought, in the actual possession of the lot in controversy, and of course in this form of action the plaintiff could not recover the possession, even if she had a right to it. To avoid this, she endeavored to prove, that the defendant's continued possession had been broken by the plaintiff taking possession of the land, shortly before she brought her action of unlawful entry and detainer. But this Court held, that she failed to prove, that she had thus broken the defendant's continued possession; but that, what she did, amounted simply to a trespass and not to an entry on the land and a dispossession of the defendant. What she did was to go upon the land and begin to put up some posts for the purpose of enclosing it, and after she had caused four or five panels of fence to be made, the defendant pulled them down, and the plaintiff then left defendant in possession and brought her action of

unlawful entry and detainer. The Court decided, that it was clear, that the putting up by her of four or five panels of fence, which the party in possession pulled down, before she had enclosed any part of the land, did not dispossess him but was simple trespass by her.

This would be an authority for the plaintiff in error in the case before us, if the plaintiff below had actually pulled down the fence, which the defendant below commenced building on August 28, 1885, before he had enclosed the land in dispute, and the defendant below had acquiesced and never completed the fence enclosing the land but had left the plaintiff in the actual possession. If these had been the facts, it would seem to be very clear, that the act of the defendant was simple trespass, but the facts are entirely different. The defendant below completed the fence, which he was building, and which enclosed the land in dispute, and the plaintiff did not pull down any part of it, though he desired so to do but refrained from so doing because of the threats of the defendant. Shortly thereafter and before the institution of this suit the defendant having enclosed this land pulled down several panels of fence between it and a lot on his farm in his possession, so that thereafter his lot, which was in his undisputed possession, was thrown into the same inclosure with the land in dispute. This, it would seem, clearly put the defendant below in possession of the land in dispute; and as it occurred three or four weeks, before this suit was brought, he must be regarded as having unlawfully certainly, if not forcibly, entered on this land and detained it from the plaintiff below unlawfully. And the simple fact, that after he had inclosed this disputed land with one of his own lots in his undisputed possession, he had put no cattle on his own lot or on this disputed land, and made no actual use of either of them excepting to let the grass grow in them, they being meadow, would certainly not save him from being regarded in law as in possession of all he had so inclosed not only his own but also the disputed land. The subsequent gathering of four or five bushels of apples from trees growing on the disputed land, and the putting of them in the vacant house on said land by the sons of the plaintiff without his direction, was not a re-taking of

possession but a simple trespass by the sons of the plaintiff. Even if the retention by the plaintiff of the keys of the old house could have been regarded as a retention of the possession of it, this would not have dispossessed the defendant from the disputed land or made it improper for the jury to render a verdict in favor of the plaintiff below.

It seems to me therefore, that, when the evidence is most benignly interpreted in favor of the plaintiff, as we have seen it must be on the motion to exclude it from the jury, the court could not reach any other conclusion, than that it proved the plaintiff's case and established, that the defendant below had forcibly or certainly unlawfully entered on the land of the plaintiff named in the summons and unlawfully detained it from the plaintiff, when this suit was instituted. The jury might of course have taken a different view of the facts ; but their verdict shows, that they regarded the case of the plaintiff as established to their satisfaction ; and the jury having found a verdict the court ought not to have set it aside and did not err in refusing to do so, unless the verdict was not in proper form, because it simply found, that the defendant unlawfully withholds from the plaintiff the premises described in the summons, instead of finding, as it is claimed, it should have done to make the verdict such a one, as the court should have rendered a judgment on, that at the time the summons issued, the defendant unlawfully withheld and still withholds from the plaintiff the premises described in the summons. It has been expressly held by this Court, that a verdict in the form rendered by the jury in this case in such a suit was not so defective as to make it improper for a court to enter up such a judgment on it, as the court did enter for the plaintiff below in this case. *Mann* v. *Bryant,* 12 W. Va. 516, 521, 522 ; *Lawson* v. *Dalton,* 18 W. Va. 766.

But if all the positions taken by counsel for the defendant below were sound in law, and their view of the facts were also sound, and it was true, as they argue, that the plaintiff below, who had had possession of this land for twenty years, was never dispossessed of it by the defendant below, and that all he did was to commit a trespass, we could not reverse the judgment of the court below, unless the summons was fatally defective. For though in such a state of facts

the jury ought to have rendered a verdict for the defendant below, and the court ought to have rendered a judgment for costs in his favor, yet it would be out of our power to reverse the judgment, which the court actually entered on the 14th of November, 1885. Of course the defendant below could not complain according to his own view of the case of that part of this judgment, which adjudged, that the plaintiff below recover of the defendant below the possession of premises, because the plaintiff below was then, as the defendant insists, and had always been in possession of them, and of course this portion of the judgment could operate no prejudice to the defendant. All then, which was left, of which he could complain, is, that the court below adjudged against him the costs, and this being the case, the controversy in this Court would necessarily involve nothing but these costs; and we have repeatedly decided, that, if the controversy in this Court is only about the costs, this Court has no jurisdiction, no matter what the controversy in the court below may have been. *Boggis* v. *Robinson*, 5 W. Va. 402; *King* v. *Burdett*, 12 W. Va. 688; *Neal* v. *Van Winkle*, 24 W. Va. 402. These decisions are based on the well settled law, that in a simple pecuniary controversy this Court according to the statute (Acts of 1882, chap. 156, sec. 4), has no jurisdiction, except when the matter in controversy exclusive of interest is of greater amount than $100.00. This means not the controversy in the court below but the controversy in this Court. *Rymer* v. *Hawkins*, 18 W. Va. 309 ; *Bee* v. *Burdett*, 23 W. Va. 744 ; *Greathouse* v. *Sapp*, 26 W. Va. 87; *Love* v. *Pickens*, 26 W. Va. 341 ; *Stanley* v. *Hubbard*, 27 W. Va. 740. But as the defendant below did move the court to quash the summons and his counsel insisted in this Court, that this ought to have been done, though really the grounds on which it is asked, were almost frivolous, still in that stage of the controversy the matter in controversy was the possession of the disputed land, and if we could reverse the case on that ground, it would according to our view of the evidence leave the defendant below in the possession of the land, and we might regard the possession of the land as thus in controversy in this Court. We have therefore taken jurisdiction of the writ of error.

6

There is one error assigned in the petition for a writ of error which inadvertently I have omitted to notice, that is, that after a motion had been made to exclude all the plaintiff's evidence as being insufficient to enable him to recover, the court on the next day allowed him to again examine his witnesses in chief upon the statement of the plaintiff's counsel, that they had not been able to bring out the facts within the knowledge of the plaintiff's witnesses. It is a sufficient answer to this allegation of error to state, that the defendant below was clearly not prejudiced in this case by this action of the court, even if it was error; for the only additional fact proved on this re-examination of the witnesses was, that the plaintiff's sons instead of simply stating, as they did the day before, that the defendant swore, that it was not safe for them to take the fence down again, they said when he swore this, he shook his first at their father. This might possibly have had some effect on the jury in reaching a conclusion as to whether the defendant took forcible possession of the land in dispute. But really this was an unimportant question, if the evidence justified the jury in holding, that the defendant took unlawful possession of the premises and unlawfully withheld them from the plaintiff. This additional evidence bore only on the question of the character of the entry of the defendant on the premises. Was it forcible or only unlawful? This the jury did not decide; nor were then called upon to decide it; for the verdict, they rendered, would have been the same, whether the entry was forcible or only unlawful. I would add however, that the practice of the Circuit Courts is liberal in allowing parties after their evidence is closed to re-call witnesses for the purpose of supplying omitted facts. It is questionable, whether such action of the court is not purely in the discretion of the court and not reviewable. Some courts hold, that it can not be reviewed. *Frederic* v. *Gray*, 10 Serge & R. 102. But we express no opinion on this point, as our Court and the Court of Appeals of Virginia review many matters, which some of the appellate courts regard as purely discretionary. *Welch* v. *County Court*, 29 W. Va.; *McDaniel* v. *Crawford*, 11 Gratt. 377, 408, 409.

For the reasons, we have given, the judgment of the Cir-

cuit Court of Marshall of November 14, 1885, must be af-
firmed and the defendant in error must recover of the plain-
tiff in error his costs in this Court expended and thirty dol-
lars damages.

AFFIRMED.